IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC LYONS,                      )
        Plaintiff                )
                                 )
        v.                       )    Civil Action No. 03-75Erie
                                 )
                                 )
LT. JOSEPH EMERICK, et al.,      )
        Defendants               )

**PLAINTIFF'S RESPONSE TO DEFENDANT
SHAWN VAN SLYKE'S MOTION FOR SUMMARY JUDGMENT**

I.    **INTRODUCTION**

The Plaintiff, Eric Lyons, pro se litigant, had ini-
tiated this civil rights action on February 12, 2003,
as a result of his constitutional rights being violated
by Defendant Shawn Van Slyke, a special agent with the
Federal Bureau of Investigation ("FBI"), and other indi-
viduals while Plaintiff was in police custody on February
22, 2001, for questioning involving the rape, kidnap and
attempted murder of an 8 year-old girl. While Plaintiff
had asserted numerous claims against Defendant Van Slyke,
the only claims remaining against him and the other police
officials are Plaintiff's allegations that Defendants
had used excessive force against him prior to any charges
being filed for his arrest, and for the denial of equal
protection of the law as was provided to other suspects
similarly situated and whom were being questioned for
the same acts. Previous motions for summary judgment has
been denied on the excessive force issue and is not pendent
before this Court for review at this time.

Before the Plaintiff had been subsequently charged for the aforementioned crimes, he was a suspect being questioned by police. The criminal investigation was under the jurisdiction of the Erie Police Department, not the FBI or Defendant Van Slyke. Defendant Van Slyke believes that the excessive force claim in this case is barred by the statue of limitations and that there is no "credible evidence" of record that excessive force was used against Plaintiff by Van Slyke. In the alternative that these arguments are not accepted by the Court, Defendant Van Slyke, preying upon the Court's sympathies by extrapolating elements of Plaintiff's criminal case onto this civil matter in an effort to negate the malicious acts that he employed against Plaintiff, believes that he should be immune from suit. The Plaintiff disagrees.

The arguments [concerning the excessive force] raised in Defendant Van Slyke's present motion for summary judgment have been addressed and defeated before this Court in a previously submitted **motion to dismiss or in the alternative for summary judgment** [Document #66] by way of the Magistrate Judge's Report and Recommendation [Document #87]. If Defendant Van Slyke had any objections to the Court's recommendation, he was given ten (10) days in which to file those objections at that time. **Id.** No objections or any motions for extensions of time to file such objections were entered, so the Magistrate Judge's

Report and recommendation had been adopted as an opinion of the Court. [Document # 91]. Defendant Van Slyke now wishes to rehash those issues and directly object to the Court's dismissal of his previous motion to dismiss or in the alternative for summary judgment ten months later. That should not be permitted here.

In addition, Defendant Van Slyke had asserted at the time during a telephone conference held before the Court on March 18, 2005, that the purpose of the proposed dispositive motion was to address the issue of the statue of limitation which the judge did not officially rule on several moths ago. [**See** Tr. of Telephone Conference, March 18, 2005]. Once again, Defendant Van Slyke is making an effort to rehash the same argument that he had presented within his initial motin to dismiss or in the alternative motion for summary judgment [Document #29].

While the Defendant has submitted documents which merely substantiates Plaintiff's claim that officials had significantly frustrated Plaintiff's efforts to file the complaint before the expiration of the statute thereby withholding the documens necessary for Plaintiff to proceed, the Defendant has fallen short of presenting evidence, i.e., **Instructions for Filing a Complaint By a Prisoner Under the Civil Rights Act, 42 U.S.C. § 1983**, which would clearly shows that Plaintiff could not mail off the complaint without the very documents that state officials

were deliberately keeping to prevent Plaintiff from submit-
ting a timely filing against other state (and federal)
officials.

On this issue, there is no dispute that the statue
of limitation for filing the complaint was February 22,
2003. However, the evidence of this case favors that the
statute be tolled to allow Plaintiff's claim to proceed.
Government interference should not be a tool to be used
to allow other government officials to escape suit. Mover,
the language of the "Instructions" issued by the court
that the **in forma pauperis** form be filed with the complaint
is explicitly clear. It was to Plaintiff's understanding
that, without the completed **in forma pauperis** forms, which
had to be completed by officials at the institution, he
could not submit his complaint before the Court. Had the
instructions not been so restrictively explicit, the statue
of limitations would not be of consequence here. Plaintiff
would have surely placed his civil action in the mail
on February 12, 2001; the same day the complaint had been
completed.

Although the Plaintiff objects to the defendant's
rehasing the facts of this case which has already been
defeated during the first attemp at summary judgment,
he will entertain this motion at the time and expense

of the Court. By all means, the Defendant's motion for summary judgment should again be denied and Plaintiff's claims of excessive use of force and denial of equal protection of the law should proceed forward as a matter of law.

## II.  STATEMENT OF THE FACTS

In his response, the Plaintiff will incorporate Defendant Van Slykes' exhibits herein as reference. The Plaintiff will also incorporate attached exhibits as reference herein. The statement of the facts in this case are as follows.

On February 22, 2001, Plaintiff had taken his car to The Car Corner to be serviced by Defendant Geroge Wellsby. While the Plaintiff was in the waiting room adjacent to the garage area, he observed Def. Wellsby through the door talking on the phone while rummaging through Plaintiff's personal property, papers and other items located in various areas of the car. (**See** Affidavit of Eric Lyons attached as Ex. A at ¶ 1). Plaintiff had later learned that the search by Def. Wellsby had been done at the behest of police without Plaintiff's consent or the authorization of a search warrant. Id. Def. Wellsby was instructed on the phone to stall Plaintiff until police arrived. Id.

At the time Def. Wellsby was searching Plaintiff's car, Plaintiff did not discern Def. Wellsby's actions

as being surreptitious, believing that perhaps he had been merely moving items out of the way so that he could access wires as part of some diagnostic tests. Id. ¶ 2. Shortly thereafter, Def. Wellsby had informed Plaintiff that he found nothing wrong with his vehicle and told him to go to Bob's Irresistible Auto Sales to speak with the manager. Id. Bob's Irresistible Auto was the place Plaintiff had purchased his car a few days before. Plaintiff had left The Car Corner and went to Bob's Irresistible. After leaving Bob's Irresistible a few minutes later, Plaintiff returned to The Car Corner and then on to Aim's Department Store. Id. (See also Plaintiff Ex. B).

While Plaintiff was conducting his shopping in Aim's, a surveillance team of police which included Def. Van Slyke was searching Plaintiff's car parked in the parking lot, using a camera to photograph the contents therein. (Plaintiff's Ex. B). After leaving Aim's, Plaintiff drove to his sister's residence where he was approached by Defs. Van Slyke, Lt. Joseph Emerick, Det. James Skindell and Det. McShane. (Plaintiff's Ex. A ¶ 3).

Def. Emerick had asked Plaintiff if he would accompany them to the police station to answer some questions to which Plaintiff obliged. Id. Although Plaintiff had consumed some brandy earlier aand had taken 600 mg. of his seizure medication, he was not inebriated and was fully lucid so he had driven his own car to the station. Id.

Once at the police station, Plaintiff was taken to a room known as "CID" where he was to be questioned by Defs. Emerick, Skindell and McShane; Def. Van Slyke remained outside. Id. ¶ 4. A video camera had been set up in the room, but had not been turned on. Id. Plaintiff was asked to sign a waiver form to be questioned outside the presence of an attorney, and was informed be Def. Emerick that he could end questioning anytime and leave. The waiver was signed and questioning commenced. Id.

During the course of questioning concerning the abduction and rape of an 8 year-old girl, Plaintiff was asked if he would submit to a voice stress or polygraph test. Plaintiff had declined both requests because he had been drinking and was on his medication--uncertain of how those would affect the tests. Id. ¶5. Plaintiff was then asked if he would would be willing to provide police with blood and hair samples. This request was also declined by Plaintiff who had expressed that giving blood was agianst his religious beliefs. Plaintiff had further declined police the hair samples because he did not trust that they would not use such samples to plant evidence to set him up with the questioned crime. Id. when Plaintiff had declined to heed to their requests, the Defendants had verbally accused Plaintiff as having committed the crime. Id.

At that time, Plaintiff had announced that he would

not answer any further questions and rose to leave. Id. ¶ 6.
Def. Emerick stepped in front of Plaintiff to prevent him
from exiting. Id. Plaintiff had inquired if he was being
placed under arrest to which Def. Emerick stated several
times, "No, but I can't let you leave." Id. Def. Emerick
called Def. Van Slyke--not that of another Erie police
officer--from outside the room and instructed him to take
his place of blocking Plaintiff's exit while he and Defe.
McShane left the room. At that time, Plaintiff was hand-
cuffed behind the back. Id.

After 15 minutes, Def. Emerick returned, agian stating
that Plaintiff was not under arrest, but that police was
securing search warrants to search Plaintiff's car and
to force Plaintiff to give them the blood and hair samples
they demanded. Id. ¶ 7.

Shortly thereafter, Plaintiff was taken to another
room by Defs. Van Slyke, Skindell, Emerick and McShane
in order to have Plaintiff's photo taken. Id. ¶ 8. When
Plaintiff refused to have his picture taken, Def. Van Slyke
had punched him several times in the ribs, and Def. Skindell
had slapped Plaintiff in the face until he conceded to
have his photo taken. Id.

Once the photo was done, Plaintiff was dragged down
a flight of stairs to an underground garage area by Defs.
Van Slyke, Emerick, McShane and McLaughlin, forced into
a car and driven to St. Vincent hospital. Id. ¶ 9. At the

Def. DiBello had arrived to assist the others. Id. Plaintiff was taken to an exam room of the EmergencyWard where Nurse Cathy Leopold entered to announce that she was ready to take Plaintiff's blood and hair samples. Id. Defendant's had attempted to remove Plaintiff's trousers, but Plaintiff had turned at the waist to prevent that from being done, expressing numerous times that it was against his religious beliefs to give blood and to be naked in the presence of Nurse Leopold. Id. ¶10.

Def. DiBello, who was standing behind Plaintiff holding onto the handcuffs, began twisting the cuffs stating, "You'll do what we fucking want you to." Def. DiBello then wrapped his arm around Plaintiff's neck, placing him in a choke hold. Id. Def. DiBello then forced Plaintiff onto the floor. Id. The other Defs. began punching Plaintiff in the chest, ribs and back and had slapped him repeatedly in the face. Def. Van Slyke instructed the others to **Be careful not to leave any marks or draw blood,"** but this did not stop Def. Van Slyke from participating in the assault. Id.

One of the Defs. had placed his knee on Plaintiff's neck to prevent him from moving and making it difficult for him to breath. Plaintiff's trousers were pulled down and Nurse Leopold was told to remove the pubic and head hairs. Id.

Plaintiff was then turned face down and a knee was placed on his spine, again causing difficulty in breathing and great pain. Id. ¶ 11. Nurse Leopold rolled the sleeves of Plaintiff's clothing up and stabbed him several times

with a needle before succeeding with drawing two (2) vials of blood. When Nurse Leopold had completed her detail, she handed Def. Van Slyke some paper towels and was instructed to leave the room. Id. Plaintiff was let up from the floor. Def. Van Slyke wiped Plaintiff's face with the towels and stated, **"you were given the chance to do this another way."** Id. Plaintiff was then returned to the police station where he was later placed under arrest. Id. ¶12. After Plaintiff's arraignment, he was taken to Erie County Prison. Id.

Following the assault at St. Vincent, Plaintiff was not inquired by Nurse Leopold if he required any medical treatment. Id. ¶13. (**See** Defendant's Ex. 2 at p. 46). When Plaintiff had been taken to Erie County Prison, he had asked for medical treatment but was denied. Id. (**See** also Def's. Ex. 2 at p. 53). Instead, Plaintiff was taken directly to the Restricted Housing Unit and not even photographed as is the customary processing procedures at the prison. Id.

The following day, Plaintiff had performed a self-examination of his body, noticing numerous injuries as result of the force used by Defendants Van Slyke, Emerick, McShane, DiBello and McLaughlin the previous day. Those injuries included, but are not limited to, Plaintiff's face and eyes being bruised and puffy; he could not swallow

proerly; and there were bruises on other parts of his body that were not clearly visible as result of his dark complexion. Id. ¶ 14. (See also Def. Ex. 4 at p. 11, No. 5).

## III. LEGAL STANDARDS: SUMMARY JUDGMENT

Federal Rules of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P 56(c); Krouse v. American Sterling, Co., 126 F3d 494, 500 n. 2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of

that fact before the lengthy process of litigation continues.'" <u>Schoch v. First Fidelity Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990) <u>quoting</u> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence--more than a scintilla but less than a preponderance--which supports each element of his claim to defeat a properly presented summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. <u>Celotex</u>, 477 U.S. at 322; <u>Country Floors</u>, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, the court is required to determine whether evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id</u>. In making this determination, the district court shall believe the evidence of the non-moving party and draw all reasonable inferences in the non-movant's favor. <u>Id</u>. at 255. It is not the court's function to assess the truth of the matter asserted, to make credibility determinations or weigh the evidence. <u>Id</u>. at 249-252. Moreover, a court should not grant summary judgment against a party who has

not had an opportunity to pursue discovery or whose discovery requests have not been answered. <u>Salahuddin v. Coughlin</u>, 993 F.2d 306-309, 310 (2d Cir. 1993); <u>Caselow v. United States</u>, 552 F2d 560, 564 (3d Cir. 1977).


## IV. ARGUMENT

As discussed more fully below, Defs. Van Slyke, Emerick, Skindell, DeBello, McLaughlin and McShane's motion for summary judgment should be dismissed.[1] The Defs. fail to offer any material issue of fact showing that excessive force used was warranted as a result that the Plaintiff was resisting arrest, that he posed a danger to police or others, or that he attempted to excape custody or arrest. Of the other six (6) known suspects whom were questioned for the same crime as Plaintiff, Plaintiff did not receive the same or similar treat-ment as them. (<u>See</u> Def. Ex. A).

The Defs. further assert that they should not be held liablle for actions performed during the execution of a valid search warrant. However, the Defs. fail to offer any evidence indicating that the "valid" search warrant had authorized them to punch Plaintiff in the ris and slap him about the face several times in the event that refused to permit his picture to be taken. Nor have the Defs. provided this Court with any evidence that the "vaild" search warrant permitted them to drag Plaintiff down a flight of stairs and taken to St. Vincent Hospital so that Nurse Leopold could perform a search on Plaintiff which she was not autorized to perform by the issuing authority that issued the warrant.

_____

[1]Defs. Emerick, McShane, Skindell, DiBello and McLaughlin have recently filed a late motion for summary judgment on June 2, 2005, contrary to the deadline for May 27, 2005 for filing dispositive motions.They have elected to incor-porate the motion filed by Def. Van Slyke as their own. Thus, the Plaintiff will incorporate these Defs. in his Response to Def. Van Slyke accordingly.

In fact, the so called "valid" search warrant which Defs. describes in their motion was not a shield and sword to be used for the purpose of propelling them above the laws of the Constitution, allowing them to exert whatever pain they deemed without fear of consequence as though he were their property. As result of their actions, the Defs. are not entitled to qualified immunity when they knew--or should have known--that the force which they'd applied was overly excessive, not objectively reasonable, and that their conduct did so violate well established law under the Constitution.

1. **The Statuet of Limitations on Plaintiff's Claims Against Defendants from the Febuary 22, 2001 Incident Should Be Equitably Tolled Due to Official Interference to Delay Plaintiff's Access to the Courts and the Restrictive Instructions for Filing In Forma Pauperis Application With Complaint**

On the issue concerning the statute of limitations, the Defendants' entire argument is focused on the doctrine followed in Houston v. Lack, 487 U.S. 266 (1988), i.e., the "Mail Box Rule." In this particular case, that doctrine should only apply if the Plaintiff had been in possession of his legal documents and was the sole reason for the documents not being filed in a timely manner. Such are not the circumstances concerning the Plaintiff's case. On the contrary, the evidence on record clearly indicates that the reason for the untimely delay in mailing off the forms was due to the negligence of government officials.

In this case, there is no dispute that Plaintiff had completed his initial civil action complaint against Defs. on February 12, 2001. (Pl. Ex. A at ¶ 15. See also Def. Ex. 2 at p. 54; Ex. D). Plaintiff is not asserting here that February 12, 2001 was the date that the complaint was filed before

14

the Court, but that the complaint was completed and ready to go long before
the run on the statute of limitations came to be. (Pl.Ex. A at ¶ 15). How-
ever, it is Plaintiff's assertion that he could not mail the complaint to
the Court as result of two (2) factors: 1. restrictions on the filing instruc-
tions explicitly provided that the in forma pauperis forms accompan the
complaint when filing if the $150.00 filing fee was not paid; and 2. prison
officials, being fully made aware that there was a deadline which Plaintiff
had to have the forms mailed out, had deliberately delayed the processing
of the forms so that the deadline will not be met against the defendants
in this case. Had it not been for these two impediments, a timely filing
would have been successful and the Defendants would have no argument on the
merit.

Policy of the institution is that prisoners filing in forma pauperis
forms to the court must send the documents to the Business Mangaer at the
prison for completion. Plaintiff had done so with instructions that the
forms be completed and were needed back before February 22, 2001, so that
they could be mailed. (Pl. Ex. A at ¶ 16; Def. Ex. 2, pp. 54-55; Def. Ex.
4, p. 15 at No. 9; Def. Ex. D). Plaintiff had also sent a copy of the com-
plaint to the Business Manager, Charles Martin, as policy provides. (Pl.
Ex. A at ¶ 16). The complaint could not be properly mailed without the forms.
(See Pl. Ex. C).

Overall, there was no justifiable reason why prison officails could
not complete the forms and return them as instructed for them to be mailed
in a timely manner. Even when Plaintiff had filed an Official Inmate Grievance

15

against Mr. Martin for his incompentence, the Grievance was blatantly denied. Instead, officials had attempted to rationalize their wrong by stating that the delay was not irrational and unintentional. (See generally Def. Ex. D, pp. 2-5). Mr. Martin and his superior had reasoned that the    Plaintiff could merely ask the court for an extension of time--although  the Plaintiff had made it clear to them that no such extension would be granted--and all would be fine. (Id.). It was clear that noone was willing to admit that any wrong was done or that the wrong was intentional. (Id.).

The law is clear that prison officials  are prohibited from actively interfering with an inmate's attempts to prepare legal documents (Lewis v. Casey, 518 U.S. 343, 351 (1996)), or to file them (Ex parte Hull, 312 U.S. 546, 547-549 (1941); see also Bounds v. Smith, 430 U.S. 817, 828 (1977)). The Plaintiff asserts here that equitable tolling of the Statute of Limitations is applicable in this case since prison offcials had taken the liberty to deliberately interfere with his efforts to to prepare and mail the appropriate IFP forms to the court in a timely manner.

The laws on equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed. See generally Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). In Oshiver, our Third Circuit Court has further validated three (3) principal situations that are unique in determining whether equitable tolling may be appropriately applied: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) **where the plaintiff in some extraordinary way has been prevented from asserting his or her rights;** or (3) where plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Oshiver, 38 F.3d at 1387; see also Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998)

16

([E]quitable tolling of the habeas limitation period is appropriate only in those rare circumstances where the petitioner has been [denied] in some extraordinary way from asserting his rights).

Surely, in the present case, where prison officials had deliberately or inadvertently hindered Plaintiff's efforts to process and mail the IFP forms to the court in a timely manner by delaying their preparation and holding onto them for four (4) days until long after the statute of limitations had expired, his situation qualifies under the second of the three principals described in Oshiver. The Plaintiff had to fully depend on prison officials to complete the forms before the deadline. In spite of having been informed that the deadline was forthcoming, officials had taken their sweet time completing them and returning them back to Plaintiff in time for mailing.

When Plaintiff did file an official Inmate Grievance on the matter, the only remedy officials were willing to bestow was the suggestion that Plaintiff request to the court for an extension of time, although it had been made clear that no such extension was possible. (See Def. Ex. D, pp. 2-5).

To deny Plaintiff's claims against the Defs. as result of the extraordinary circumstances and events which were beyond Plaintiff's control would cause him to suffer a serious loss and injury. Moverover, the filing instructions which accompanied the complaint forms from the Clerk of Courts explicitly stated that the IFP forms were to be completed by prison officials and sent in when filing the complaint. (Pl. Ex. C). So, although the Plaintiff had the complaint forms completed and ready to go ten (10) days before the run on the statute had expired, he still could not proceed forward until

17

prison staff was finished their procrastination.

Therefore, due to the extraordinary circumstances in which prison officials had deliberately delayed the processing of the IFP forms, and because the language of the Clerk's instructions on mailing the IFP forms with the complaint when filing with the court, Plaintiff's claims against Defendants should appropriately be tolled as a matter of law.[2]

---

[2]The provisions for tolling under Pennsylvania law are promulgated by statute 42 Pa.C.S.A. § 5554

### 2. Plaintiff Objects to Defendants' Argument As to the Excessive Force Claim As Being Moot, As Defendants Were Given the Opportunity to Object to the Magistrate Judge's Report and Recommendation

Plaintiff objects to Defendants' argument as to the excessive force as being a moot issue, as the Defs. were given the opportunity to object to the Magistrate Judge's Report and Recommendation ("R&R") if there were any issues they were in dispute with. Therefore, the Defendants' argument concerning the excessive force must be denied as a matter of law.

The Defs. had filed a previous summary judgment motion wherein they had argued similar issues concerning Plaintiff excessive force claim. (See Document # 66 and 81). They had vehemently denied that fforce had been used or that Plaintiff had suffered any injuries as stipulated in his complaint. (Id.). Judgment had been denied Defs. in the Magistrate Judge's R&R. (See Document # 87 and 100).[3]

Following the R&R, the parties were allowed ten (10) days from the date of service to file Objections thereto. (Id.). Def. Van Slyke failed to file any objections on the issue or did not request an extension of time in which to do so. Defs. Emerick, Skindell, McShane, McLaughlin and DiBello had filed timely objections to the R&R on February 28, 2005, which had been denied by the Court. (See Document # 91 and 103). The R&Rs were adopted as the Opinion of the Court. The Defs. now wish to revisit those same issues again in their present motions for summary judgment stating that Plaintiff has no credible evidence in which to show that he had suffered any visible injuries indicative that excessive force was used. Having previously ruled on this matter, the Court should reject Defendants' argument

[3]Judgment was granted in part and denied in part for Def. Van Slyke. Specifically, the First and Forth Amendment claims were dismissed, but the claim of excessive force was sustained to proceed forward. (See Document # 87).

as being a moot issue.

As this Court has thoroughly explained, there is no actual injury component to an excessive force claim. See Hudson v. McMillian, 503 U.S. 1 (1992). In Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995), the Third Circuit explained the elements of an excessive force cliam:

> An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Forth Amendment's protection from unreasonable seizure of the person. Graham v. Connor, 490 U.S. 386, 394-95 (1989). A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Forth and Fourteenth Amendments to the United States Constitution. Brown v. Borough of Chambersberg, 903 F.2d 274, 277 (3d Cir. 1990). Police officers are privileged to commit battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force. Edwards v. City Phila., 860 F.2d 568, 572 (3d Cir. 1988).

> When a police officer uses force to effectuate an arrest that force must be reasonable. Graham, 490 U.S. at 386. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arresting or attempting to evade arrest by flight." Id. The reasonableness inquiry is objective, but should give appropriate scope to the circumstances of the police action, which are often "tense, uncertain, and rapidly evolving." Id. at 397.

Id. at 633-34. See also Johnson v. Watson, 2004 WL 2439718 at *3 (3d Cir. 2004)("The Supreme Court has stated that in an excessive force claim the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

Thus, the proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, **whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."** Graham v. Connor,

490 U.S. 386, 396 (1989).

It was based upon this legal analysis that this Court had denied Defs. itial motion for summary judgment, as well as for reasons that they had provided no evidence as to the facts and circumstances of this case. (See Document # 87 and 100). The Defs. now return for a second attempt, thereby presenting the Court with a news video tape which shows several frames of Plaintiff's facee and what **appears** to be no visible signs of injuries. (See Def. Ex. 7; Declariation of Rebecca Haywood, Esq.).

Def. Van Slyke further presents what he describes as "overwhelming evidence" that no force was used against Plaintiff. In support of this claim, the Def. offers the statements of Nurse Leopold, Attorney Mark Richmond and Attorney Elverage Murphy. (See generally Def. EX 3 at pp. 28-42, 44, 68-78, and 112-113). The Def. also offers his own "Response" to Plaintiff's Interrogatories (Def. Ex. 5) and the Affidavit of Nurse Catherine Leopold (Def. Ex. 6). In spite of this so-called "overwhelming evidence," it is not proof that the Defs. did not do what they did to the Plaintiff, and that was used excessive force against him at the police station and St. Vincent Hospital.

In fact, Plaintiff also has a video news tape similar—if not the same— as that which the Def. has presented as evidence. On this tape, the speed has been reduced to slow motion and shows repeated frames of the Plaintiff at various angles as he is being escorted by police after his arrest.[4]   This video clearly shows indicative signs of injuries to Plaintiff's face around his left eyebrow and several lumps on the back of his head. (See   Declaration of Eric Lyons at Pl. Ex. D).

---

[4] The Plaintiff has no provisions of being able to duplicate this tape for the Court and the Defs. Considering that this is the only copy that he has available, and that this tape is a valuable part of his Evidence File of his criminal case, he would release it to the Court for review if he's guaranteed it will be returned to him. (See Pl. Ex. D).

When the Plaintiff had examined himself the following morning after
he arrived at the Erie County Prison, he had encountered numerous injuries
on his body as result of the brute force that Defs. had subjected him to.
(Pl. Ex. A at ¶ 14, Def. Ex. 4, p. 11). The Plaintiff was not "bloodied,"
as Def. Van Slyke had cautioned the others not to draw blood or leave any
marks (Pl. Ex. A at ¶ 10, Def. Ex. 2, p. 44, Def. Ex. 4, p. 7(7)). They were
very successful in their efforts not to "draw blood," but had, indeed, left
plenty of "marks," many of them being beneath Plaintiff's clothing where
the camera lens could not view. **In addition, when Attorney Richmond had visited
the Plaintiff, it had been three (3) days later, a time when any swelling
would have likely gone down.** (See Def. Ex. 3, "Mark Richmond" at p.52). Of,
course, Plaintiff had failed to raise that issue at the time he'd questioned
Mr. Richmond at trial, but the fact of the matter is made clear here.

While the Court may take heed to the serious of the crime in question,
the Court must also take into consideration the fact that the Defs. have
not presented any facts to substanciate that Plaintiff posed any threats
to the safety of officers or others, and that he was actively resisting arrest
or attempting to evade arrest by flight as stipulated in Graham. That Plaintiff
was not allowing officers to take his picture or blood was not a reason for
them to use the type of force they had which left Plaintiff with the injuries
he sustained. What the Defs. are telling the Court is that, because the Plain-
tiff was going to be charged for the severe crime of abducting and raping
an eight-year-old girl, the brute force the Defs. had used on the Plaintiff
should be overlooked as being all right.

Moreover, Plaintiff's actions were not "combative" in the manner in
which the Defs. will want this Court to believe. Plaintiff was in handcuffs

with both placed behind his back. Plaintiff did not kick at the officers, attempt to bite them, spit at them, elbow them, knee them, headbutt them. What had Plaintiff done that made him "combative, dangerous, and aggressive?" He had merely refused to give his blood. That is what Plaintiff had done, nothing more. And for that, Defs. had beat him until he capitulated to do their will. Moreover, they also saw that as a time in which to exact a little vigilantism for the crimes committed against the young victim the Plaintiff would come to be charge as having committed. That was not what Graham was was factored to establish.

Finally, when Plaintiff was being dragged down the stairs at the police station, he was not being "combative" or resisting arrest. In fact, he had not been under arrest at that point and time. Plaintiff had **resisted to being dragged down the stairs because police were taking him some place the warrant did not direct them to take him.** As Plaintiff had testified:

Q:   Were you resisting going down the steps?

A:   **Yes indeed. I didn't want to go to Saint Vincent. They didn't have a warrant to take me anywhere, to Saint Vincent. There was no mention that they had a warrant to take me to Saint vincent.**

(Def. Ex. 2 at 36). So it was Plaintiff's belief that police did not have the right to drag him to wherever they wanted to take him where the warrant did not authorize them to do so.

The Defs. overall argument is without merit for which summary judgment can be granted in this case. Contrary to Def. Van Slyke's assertion, he did not "play a minor role in the execution of the search warrant and the collec- tion of evidence." Def. Van Slyke was not the instigator of events, but his

23

role was as direct as all other Defs. in this case. When the Plaintiff had refused to have his picture taken, it had benn Def. Van Slyke who had punched the Plaintiff in the stomach and ribs several times. When the Plaintiff had refused to allow his pants to be removed in the presence of the female nurse while at St. Vincent, Def. Van Slyke--as did all the others--had commenced to beat the Plaintiff about his body and face, causing severe bruising and exstreme pain; an act which continued even after Plaintiff was taken to the floor. These Defs. were not attempting to "subdue" plaintiff, as he was already subdued and cuffed with both hands behind his back. These Defs. were deliberately trying to--and did so--inflict savage, wanton pain. And although Def. Van Slyke had instructed the others not to draw blood or leave mark, he did nothing to minimize the situation by telling them to stop what they were doing altogether. No, it was all right that they continued in the beating so long as they spilled no blood or left behind no visible tell-tale signs of what was transpiring.

Contrary to Def. Van Slyke's assessment of Plaintiff's complaint, the accounts of what had taken place on February 22, 2001, at the Erie police department and at St. Vincent Hospital as described by the Plaintiff, did not make Def. Van Slyke's role appear minor in any way. The contusions on Plaintiff's face and head as seen in the video tape are evident of that.

Therefore, due to the facts presented here, within Plaintiff's affidavits and the video tape that he will provide to the Court, Motion for Summary Judgment for all Defendants must be denied as a matter of law. See Brooks v. Kyler, 204 F.3d 102 (3d Cir. 2000); Hudson v. McMillian, 503 U.S. 1 (1992).

### 3. On the Alternative, the Defendants Are Not Entitled to Qualified Immunity Where Clearly Established Law Was Violated and Where There Is a Material Issue of Fact in Dispute

Even if this Court were to decide that the Defendants' arugument on the excessive force issue may stand for consideration after the Court's previous denial of summary judgment on the issue, the Court should not now find that the Defs. are protected from suit under the doctrine of qualified immunity where there is a material fact in dispute and the Defs. had violated clearly established law.

Qualified immunity shields an official performing discretionary functions providing that his actions did not violate clearly established law and where factual disputes exist on record. See Harlow v. Fitzgerald, 457 U.S. 800 (1982); see also Martinez v. Stanford, 323 F.3d 1178 (9th Cir. 2003). Thus, qualified immunity protects "all but the plainly incompetent of those who knowingly violate the law." Malley v. Briggs, $75 U.S. 335, 344-45 (1986).

A court's determination of whether qualified immunity applies involves a two-part inquiry, beginning with the threshold question: (1) whether the facts alleged "show that the officers' conduct violated a constitutional right;" and (2) whether the constitutional right in question was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answers to these inquires are no, analysis need proceed no further and defendants are protected from suit. Id. But if the answer to the inquires are yes, then qualified immunity must equally be denied. Id. at 201-202. Thus, the question becomes would it be

clear to a reasonable officer that his conduct was lawful in the situation he confronted? Id.

If the defendants had violated clearly established law "of which a reasonable person would have known," it is no defense that they did not actuall know about the law. Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991)(fact that neither defendant "understood" that their actions were illegal did not establish qualified immunity); Elliot v. Thomas, 937 F.2d 338, 344 (7th Cir. 1992)(defendant's actual knowledge of governing legal standards is irrelevant), cert. denied, 112 S.Ct. 1242 (1992).      However, the Defs'. summary of the Supreme Court's holding in Saucier is correct:

> [I]t is sometimes difficult for an officer to determine how the relevant doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier v. Katz, 533 U.S. at 205. Thus, the doctrine of qualified immunity shields "officers from the sometimes hazy border between excessive and acceptable force," and ensures that "before they are subjected to suit, officers are on notice their conduct is unlawful." Id. at 206.

If the doctrine of Saucier is to be applied to the case before this Court, Plaintiff does not see where the Defs. argument lies. In Brown v. Chambersberg, the law was clearly established and officers were on notice in that "[A] cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates the Forth and Fourteenth

Amendments of the United States Constitution." Id. 903 F.2d  274,  277  (3d Cir. 1990). The  law governing excessive use of force by officers was further established  by  the  courts  in  the  case of Edwards v. City of Phila., 860 F.2d  568, 572 (3d Cir. 1988); Graham v. Connor, 490 U.S. 386, 394-95 (1989); Hudson v. McMillian, 503 U.S. 1 (1992);  Groman  v.  Township  of  Manalapan, 47 F.3d 628 (3d Cir. 1995). In  using  such  force,  an officers' actions must be "objectively reasonable" in light of the facts and circumstances confronting them  without  regard  to their underlying intent or motivation. See generally Johnson v. Watson, 2004 WL 2439718, at *3 (2004). thus,  the  actions  of  the Defs. are  not  to  be  weighed  by this Court in regards to their intent or motivation to get Plaintiff's blood, picture and hair samples.

On the contrary, if the Court is to consider the likelihood that the Defs. may  "have a mistaken understanding as to whether a particular amount of force is  legal,"  i.e.,  Saucier,  533  U.S.  at 205, the Graham Court has set the "reasonableness"  standard  in  which  the  use  of force is to be measured by courts by  paying  "careful  attention to the facts and circumstances of each particular  case,  including  the  severity of the crime at issue, whether the suspect  poses  an  immediate  threat to the safety of the officers or others, and  whether  he  is  actively  resisting arrest or attempting to evade arrest by flight." Id. 490 U.S. at 386.

Therefore,  in  applying  the  principles  set forth above to the present case,  the  Court  should find that the Defs. are not protected from suit under the  doctrine  of  qualified  immunity.  First, the Defs. have all denied that the claims  described  by  the  Plaintiff's complaint did not occur. Ever. Now

27

the Defs. are seeking to convince the Court to consider that their actions were a mistake in that they did not know that the amount of force they had used was unreasonable. Such an argument must fail here. While they have met first prong of the "reasonableness" standard as set forth in Graham by establishing that the crime at issue was severe, that in and of itself was not grond enough to subject the Plaintiff to wanton pain and injuries. Moreover, the Plaintiff was only a suspect, it had not even been established that he had committed the crime in question.

Nevertheless, the Defs. have failed to meet the remaining prongs under Graham by presenting evidence indicative that the Plaintiff posed a threat to the officers or others, not even by a push; that he was actively resisting arrest; or that he attempted to evade arrest by flight. So Plaintiff's refusal to be photographed, to be dragged to St. Vincent against the authorization of the warrant, to be stripped in front of a woman and allow her to probe his genitals and take his blood against his religion may have all frustrated the Defs. and their investigation at that moment, but there was a very fine line between merely "subduing" a person who's handcuffed behind his back and surrounded in a small room by five (5) armed police officers and a nurse and that of purposely beating him until his body is bruised, swollen and pained. The Defs. had crossed that line, knowing exactly what they were doing and why they were doing it.

Their actions were not "objectively reasonable" under the standards outlined in Graham; qualified immunity must not be their protection from Plaintiff's complaint.

**V.    CONCLUSION**

WHEREFORE,  for  the above stated reasons and the facts set forth herein,

the  Court should deny summary judgment to Defs. Van Slyke, Emerick, Skindell,

DiBello, McLaughlin  and  McShane  as a matter of law and rule that this case

proceed to trial.


                                        Respectfully submitted,


                                        Eric J. Lyons, EY-1127
                                        50 Overlook Drive
                                        LaBelle, PA 15450

Dated: July 28, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
ERIC LYONS,                        )
        Plaintiff                  )
                                   )
    v.                             ) Civil Action No. 03-75Erie
                                   )
LT. JOSEPH EMERICK, et al.,        )
        Defendants                 )
```

### CERTIFICATE OF SERVICE

I, Eric Lyons, the pro se litigant in the above matter, hereby certify that a true and correct copy of the with Plaintiff's Response to Defendant Shawn Van Slyke's Motion for Summary Judgment has been served upon the following on this day of July 28, 2005:

```
Ms. Rebecca Haywood, Esq.        Gerald Villella, Esq.
700 Grant Street, Ste. 400       626 State Street, Rooom 505
Pittsburgh, PA 15219             Erie, PA 16501


Clerk of Courts                  George Wellsby
P.O. Box 1820                    1177 East Gore Road
Erie, PA 16507                   Erie, PA 16504
```

Eric J. Lyons, EX-1127
50 Overlook Drive
LaBelle, PA 15450