IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC LYONS, | |
|     Plaintiff | |
| | |
| v. | Civil Action No. 03-75 Erie |
| | |
| LT. JOSEPH EMERICK, et. al., | |
|     Defendants | |

### AFFIDAVIT OF ERIC LYONS

I, Eric Lyons, being the Plaintiff in the above matter and being confined at the State Correctional Institution at Fayette County, Pennsylvania, hereby state under the Penalties of Perjury that the following statements are true and correct to the best of my knowledge.

1. On February 22, 2001, I had taken my car to The Car Corner to have repair work done on the engine by George Wellsby, a defendant in this action. While waiting in the waiting area adjacent to the garage, I saw Mr. Wellsby through the door talking on the phone while rummaging through my property located in various areas of my car. I later became aware that Mr. Wellsby had performed a search on my car at the behest of Police and this was done without my consent or authorization of a search warrant. Mr. Wellsby was instructed on the phone to stall me until Police arrived.

2. At the time I observed Mr. Wellsby searching my car, I did not discern his actions as being surreptitious. I had actually believed that perhaps he was merely moving items around to access wires to perform diagnostic test. Shortly thereafter, Mr. Wellsby informed me that he found nothing wrong with my car and instructed me to go to Bob's Irresistible Auto Sales, where I'd purchased the car a few days before, and speak

to the manager, Richard Dugas. I had traveled to Bob's Irresistible, spoke with Mr. Dugas and was sent back to The Car Corner to schedule another appointment. From there, I'd traveled to Aim's Department Store.

3. While in the store shopping, a Police surveillance team, that included FBI Agent, Shawn Van Slyke, also a defendant of this action, was in the parking lot searching my car using a camera to photograph the contents therein. After I'd left Aim's a short time after, I traveled to my sister's residence, being followed for sometime by Defendants Van Slyke, Lt. Joseph Emerick, Det. James Skindell and Det. Gerald McShane. When I'd parked, the Def's. approached me and asked if I would accompany them to the Police station to answer some questions. Although I had earlier consumed some alcohol and 600 mg. of my medications for seizures, I was in no way inebriated and was fully lucid to drive my own car to the station.

4. At the station, I was taken to the Criminal Investigation Division ("CID") where I was to be questioned by Def's. Emerick, Skindell and McShane. Def. Van Slyke remained outside. A video camera was set up in the room, but peculiarly was never turned on. I was asked to sign a waiver agreeing to speak to Police out of the presence of an attorney and was informed by Def. Emerick that I could stop questioning at anytime and leave. The waiver was signed and questioning began.

5. Sometime later, during the course of questioning concerning the abduction and rape and attempted murder of an 8 Year-old girl, I was asked if I'd submit to a voice stress or polygraph test. I had declined both requests, stating that I'd been drinking and was on medication. I did not know what effect those would have on the tests. I was then asked if I'd willingly provide blood and hair samples to Police. Besides declaring my innocence of the crimes in question,

I had declined to give blood due to the act being against my religious belief. I had further voiced my distrust of submitting hair to Police due to my skepticism that Police would use it to plant in order to falsely frame me for the questioned crime. When I declined to heed to Police requests, Def's. Emerick, Skindell and McShane had assumptuously accused me as having did the crime.

6. At that time I'd stopped all questioning and rose to leave. Def. Emerick stepped in front of me to prevent me from leaving. I'd inquired if I was under arrest to which Def. Emerick answered, "No, but I can't let you leave." Def. Emerick summoned Def. Van Slyke to take his place blocking my exit. Defs. Emerick and McShane left the room. At that time I was placed in handcuffs behind the back.

7. After 15 minutes, Def. Emerick returned, again stating I was not under arrest, but that search warrants were being secured to search my car and to compel me to give the a photo, and blood and hair they demanded.

8. Shortly thereafter, Def. McShane returned and I was taken to another room by Defs. Emerick, Skindell, Van Slyke and McShane in order to have my picture taken. When I refused to allow the photo to be taken, Def. Van Slyke had punched me several times in the stomach and ribs while Def. Skindell had slapped me across the face repeatedly until I capitulated to allow the photo to be taken.

9. Once the photo was done, Defs. Emerick, Van Slyke, McShane and McLaughlin had dragged me down a flight of stairs against my will and without warrant, forced me into a car and drove me to St. Vincent Hospital where they planned to take my blood and hair.

-3-

Officer DiBella, also a Defendant in this matter, had arrived to offerer assistance. I was taken to an examination room in the Emergency ward. Nurse Cathy Leopold entered to announce that she was ready to take my blood and Pubic and head hairs.

10. I did not want Nurse Leopold probing around my genitals an act that was also against my religion. This was told to Defs. numerous times. The Defs. attempted to force my pants down. I had turned at the waist to defeat their efforts. Def. DiBella, who was standing behind me holding the cuffs, began twisting the handcuffs, causing severe pain, and stated, "You'll do what we fucking want you to." Def. DiBella then wrapped his arm around my neck in a choke hold and began choking me. Def. DiBella then forced me onto the floor. Defs. Emerick, Van Slyke, DiBella, McShane and McLaughlin all began punching me hard about the body with their fists and slapping my face numerous times. I heard Def. Van Slyke tell the others to "Be careful not to leave any marks or to draw blood," but he did not tell them to stop nor did he stop. A Def. placed his knee and full weight on the side of my neck to prevent me from moving and hinder my breathing. My pants were pulled down, exposing my genitals to Nurse Leopold, and she was instructed by one of the Defs. to remove the Pubic and head hairs.

11. After that had been completed, I was turned face down and a knee was placed on my spine, again causing great pain and laborous breathing. Nurse Leopold rolled up the sleeves of my clothing of my right arm, stabbing me several times before

-4-

drawing two (2) tubes of blood. Once she finished, Nurse Leopold handed Def. Van Slyke some paper towels and was instructed to leave the room before I was let up. My pants were pulled up but left unbuckled. Def. Van Slyke said, "You were given the chance to do this another way," as he wiped my face with the paper towels.

12. I was taken back to the Police Station. Several hours later I was placed under arrest and taken to my arraignment for the charges and later to Erie County Prison.

13. Following the brutal assault at the Police Station and St. Vincent, it was not inquired if I'd wanted or needed medical attention of any kind. Nurse Leopold had not even taken my pulse. When I arrived at Erie County Prison I had asked to see a nurse, but the request was ignored by Prison Guards. I was not processed at intake upon arrival at ECP, but immediately taken to the Restricted Housing Unit ("RHU").

14. Later that morning, I'd done a careful examination of my body to assess the injuries I sustained while at the Police Station and St. Vincent. The injuries sustained were that my face and eyes were bruised and swollen, I could not properly swallow and there were swelling and bruising on other parts of my body in which the bruises were not visible due to my dark complexion but was painful to the touch. Other noticeable injuries included several lumps on my head; a small bruise on the side of my neck; swelling of the neck; several bruises on my chest; bruised ribs; bruising under both armpits; pain

-5-

in my upper and lower back; three puncture wounds and bruises on the inside of right forearm where Nurse Leopold stabbed the needle; torn skin, small cuts, swelling and numbing of both wrists from the twisting of the handcuffs by Def. DiBello.

15. On February 12, 2003, while in the RHU at SCI-Huntingdon, I had completed the Civil Complaint § 1983 forms listing the names of all defendants being sued in this matter. The Complaint was done ten (10) days before the run on the statute of limitation.

16. The "Instructions for Filing a Complaint By Prisoner" sent along with the Complaint Packet by the Clerk of Courts, made it clear that I had to file the in forma pauperis forms with the Complaint if I wasn't paying the $150 filing fee. The forms had to be completed by prison officials. According to SCI-Huntingdon Procedures for Prisoners filing in forma pauperis to the court, the in forma pauperis and Complaint (so officials will know who the Prisoner is suing) are to be sent to the Business Manager for Processing. Thus, on February 12, 2003, I had sent everything to the Business Manager, Charles Martin, with a request instructing that the forms needed to be processed and returned to me for mailing to the Court before the deadline of February 22, 2003.

17. Being fully aware that I was suing several Police officials involved in my Criminal Case, and that there was a filing deadline of February 22, 2003, I believe that the Business Manager intentionally Procrastinated Processing the in forma pauperis until February 21, 2003, returning them to me on February 25, 2003 after I'd written to the Grievance Coordinator and Superintendent's Assistant, Diane Baney,

and complained about the delay. Upon return of the forms by the Business Manager, they were immediately mailed to the Court on February 25, 2003.

Pursuant to 28 U.S.C. §1746, I do affirm under the Penalties of Perjury that the foregoing statements are true and correct to the best of my knowledge. Executed this 17th day of June 2005, at the State Correctional Institution at Fayette County, Pennsylvania.

*E. Jetson Lyons*
Eric J. Lyons, EX1127
50 Overlook Drive
LaBelle, PA 15450