UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ERIC JETSON LYONS,            :
        Plaintiff             :
                              :
VS.                           : CIVIL DOCKET NO.:
                              : 03-CV-75
JOSEPH EMERICK, LT., JAMES :
SKINDELL, G. McSHANE, DET.,:
SHAWN VAN SLYKE, SPECIAL    :
AGENT, J. DIBELLO, OFFICER,: Cause No. 42:1983
KATHY LEOPOLD, LPN, GEORGE : Prisoner Civil Rights
WELLSBY, BUSINESS SONAR,    :
1177 EAST GORE ROAD, ERIE, :
PA 16504, and OFFICER       :
McLAUGHLIN,                  :
        Defendants           :



        BE IT REMEMBERED THAT on May 18, 2005, commencing
at 10:30 a.m., at the offices of Judge Baxter, Federal
Courthouse, Erie, Pennsylvania, taken before and by
Kay Trigilio, Court Reporter and Notary Public for the
Commonwealth of Pennsylvania, the following
proceedings were had.


For the Plaintiff:
    Eric Jetson Lyons, Pro Se

For the Defendants:
    Gerald J. Villella, Esquire
    City Solicitor's Office
    626 State Street, Room 525
    Municipal Building
    Erie, PA  16501

For the Defendant, Shawn Van Slyke:
    Rebecca Ross Haywood, Esquire
    United States Attorney's Office
    700 Grant Street, Suite 400
    Pittsburgh, PA  15219


                REPORTED BY KAY TRIGILIO, RPR
            FERGUSON & HOLDNACK REPORTING, INC.

1    THE COURT:  I have a huge file.  What I'm going

2  to do is call the case first and tell you who is in my

3  room, and then I would like everyone to identify

4  themselves for the record and tell me who is listening to

5  this hearing from where you are.

6    This is civil action number 03-75 Erie, Eric

7  Lyons versus Lieutenant Joseph Emerick, et al.  In my

8  conference room I have the court reporter, my staff

9  attorney, Cynthia Sander, Esquire, Defendant George

10  Wellsby, and Attorney Jerry Villella, who represents

11  Defendants Emerick, Skindell, DiBello and McLaughlin.

12    MR. VILLELLA:  And also McShane, too.

13    THE COURT:  And McShane.  Now, would everyone tell

14  me who else is listening to this conversation?

15    MS. HAYWOOD:  Rebecca Haywood from the United

16  States Attorney's Office.  I represent Special Agent Shawn

17  van Slyke.

18    THE COURT:  Anyone with you, Ms. Haywood?

19    MS. HAYWOOD:  No.  I'm in a conference room.

20    MR. LYONS:  Eric Lyons.  I'm pro se on this case

21  here.

22    THE COURT:  Mr. Lyons, are you on a conference

23  phone or a handheld?

24    MR. LYONS:  I'm on a handheld phone.

25    THE COURT:  All right.  Is there anyone there with

1  you in the room?

2         MR. LYONS:  I'm with the unit manager of the

3  department, I'm in here, and another officer standing by.

4         THE COURT:  Where are you, Mr. Lyons?

5         MR. LYONS:  I'm in the office of the unit manager

6  at LTSU, SCI, Fayette County.

7         THE COURT:  SCI, Fayette County, that's what I

8  wanted to know.  Anyone else?

9         MR. LYONS:  There's no one else here.

10        THE COURT:  Is there anyone else on line?  All

11 right.

12        We are here to move this case along.  Now that a

13 Final Order on my report and recommendation has been

14 entered, which granted in part and denied in part the

15 Defendant's Motions for -- Motions to Dismiss and/or Motion

16 for Summary Judgment, and we are to try to get this case

17 moving along because it's already two years old, and the

18 plan of this Court is to have it tried in late summer,

19 early fall, so we want to get moving.

20        I have here in front of me a Motion for Protective

21 Order that was filed today by Defendants Emerick, Skindell,

22 DiBello, McLaughlin and McShane -- sounds like a law

23 firm -- and that has to do with the production of document

24 requests made by plaintiff.  So I think we can turn to that

25 first, perhaps, but I also need to speak to Mr. Wellsby,

1    because other than your Answer, we really don't have much

2    participation by you, so we wanted to see where you were on

3    all of these things.

4         I'm going to ask -- first of all, I'm going to

5    talk to Mr. Lyons first.  Mr. Lyons, do you understand that

6    as the plaintiff in a civil case you have to pay for the

7    copying costs of all documents produced to you in

8    discovery?

9         DEFENDANT LYON:  I have to pay for the copying

10   costs?

11        THE COURT:  Yes, that's correct, because you are

12   the plaintiff; you're the one bringing the lawsuit.  So

13   when you request documents -- how it works, if you were not

14   in prison, how it works for a plaintiff is they would go or

15   their attorney would go to the solicitor's office, and all

16   the documents would be in the room, and they would go

17   through them, and they would tab or tell them, "I want

18   copies of these."  They wouldn't ask for all of them to be

19   copied because they don't need them all, and they couldn't

20   afford them all, so they would say, "I want copies of these

21   things," and then they would pay for the copying costs, and

22   then they would have them sent to them at their own

23   expense.

24        Now, because you are incarcerated, you aren't able

25   to go to the documents and go through them and see what you

4

1  need.  So because it would cost you so much to get the

2  numbers of documents that you have asked for, you may wish

3  to whittle some down, anyway, and then we will also talk to

4  defendants here and see what their reason is that they need

5  a protective order from all of your requests.  So I want

6  you to keep that in mind.

7      And now I will turn to Mr. Villella and ask him to

8  explain to me the basis for his request for a protective

9  order and ask him if, in fact, that protective order would

10  go to all of the documents requested by the plaintiff.

11      MR. VILLELLA:  I've been looking through his list

12  of requested documents.  He's going to trial, as I

13  understand, on the very narrow issue of whether he was

14  roughed up during the collection of hair and blood samples

15  by these individual police officers, defendants, and I

16  guess by, allegedly, the FBI agent.  He has not made any

17  allegation or named the City as a party, and he's asked for

18  a lot of documents that relate to history and practices

19  such as deliberate indifference to excessive force, which

20  are not in issue here; he hasn't made them an issue, so he

21  can't make them an issue here now.  I think he may be

22  entitled to documents relating to the history of these

23  individual officers --

24      THE COURT:  Excessive force is gone?

25      MR. VILLELLA:  Excessive force is still there.

1          THE COURT:  I thought it was.

2          MR. VILLELLA:  That's the only thing left is

3     excessive force as to these individuals, but there's no

4     claim that the City deliberately permitted it.

5          THE COURT:  Or has a plan or policy?

6          MR. VILLELLA:  Sure.  And he's asking for a lot of

7     these documents to see histories of what the City's

8     policies were, et cetera, et cetera.  I think he can see if

9     there's anything in these individual officers' histories

10    that they've been alleged or have been found to have

11    committed excessive force.

12         THE COURT:  I think number 1 is that, complete

13    police service and history files, internal affairs, all

14    investigations, histories, records, any reports of

15    extraordinary occurrences, psychological treatments, those

16    sorts of things for the five officers in the case, so those

17    things you think are okay?

18         MR. VILLELLA:  I think they're okay to the extent

19    they relate -- like, for instance, psychological treatment

20    if it relates to a claim of excessive force --

21         THE COURT:  There may be a confidentiality

22    treatment to that.

23         MR. VILLELLA:  If they received psychological

24    treatment for non-work-related things.

25         THE COURT:  Did you hear that, Mr. Lyons?

1          MR. LYONS:  Yes, I heard that.

2          THE COURT:  Sometimes Mr. Villella's voice goes

3    low, and I want to be sure you hear him.

4          MR. VILLELLA:  Generally for the individual

5    officers.

6          THE COURT:  He's thinking number 1 is something he

7    can do.  Do you have any idea how many documents that would

8    be?

9          MR. VILLELLA:  At this point I don't know.  I'm

10   sure each of them has a personnel jacket in which I think

11   reprimands are kept for two years.  I think the union

12   contract requires expungement of negative things after two

13   years, so I don't know if there's any history before that,

14   unless we have some other way of knowing about it.  I don't

15   know if these individuals have any such records, but I'll

16   find out.

17         THE COURT:  The second one is the policies,

18   procedures, regulations -- what is left about Saint

19   Vincent?

20         MR. LYONS:  Excuse me?

21         THE COURT:  What is left in the case about Saint

22   Vincent?  Is that the excessive force that was charged at

23   Saint Vincent?

24         MR. LYONS:  Yes.

25         THE COURT:  Because Nurse Leopold is gone.

1          MR. VILLELLA:  Right.

2          MR. LYONS:  Yes.

3          THE COURT:  So it would be what happened to you

4     there at the hands of the officers?

5          MR. LYONS:  Exactly.

6          MR. VILLELLA:  He may be asking for documents that

7     don't even exist.  He's asking to see if there's anything

8     that spells out the relationship between the City and Saint

9     Vincent Health Center as far as how evidence is collected

10    from arrested suspects.  I don't know that there's any such

11    documentation.

12         THE COURT:  You can take a look.  That might solve

13    that one.

14         MR. LYONS:  I believe that there should be some

15    kind of documentation.

16         THE COURT:  Mr. Lyons, you will find that whether

17    it should be, there often isn't.

18         MR. VILLELLA:  I'll find out.

19         THE COURT:  He's going to check and see what there

20    is.  But I agree that that should be tightened up.  That

21    would be directly affecting how -- the persons who are

22    charged with excessive force at the hospital and that would

23    go directly to how they're allowed to restrain him to

24    collect samples and those sorts of things, and that's

25    limited to those things.  We don't have large -- policies

8

1   and procedures generally are not at issue because there is

2   not a Manel claim.

3            MR. VILLELLA:  Right.

4            THE COURT:  Number 3.  Now, that is directly on

5   Saint Vincent things.  I know you sent these before there

6   was a final order, Mr. Lyons, so at the time you sent

7   these, actually, Nurse Leopold was not gone, I guess -- oh,

8   she was; she's been gone for a while.

9            MR. VILLELLA:  A few months, I think.

10           THE COURT:  That's asking for the internal

11  policies and procedures.  I think that's irrelevant if you

12  get the information from the City.  Do you understand what

13  I'm saying?

14           MR. LYONS:  No.  You're saying the internal

15  policies of Saint Vincent is irrelevant?

16           THE COURT:  Yes, because Saint Vincent is not a

17  defendant in this case.  How is that relevant?

18           MR. LYONS:  I would deem it to be relevant if they

19  are somewhat associated with the police department or have

20  some kind of agreement with the police department.  I mean,

21  the two would coincide, wouldn't it?

22           THE COURT:  How?  How would you use that

23  information?  You think about how you would use it at

24  trial.  You can't bring anything against Saint Vincent

25  because they are not a defendant in the case.

1    MR. LYONS:  Not necessarily bringing anything

2    against Saint Vincent, but I'm going to show that their

3    policies at Saint Vincent don't -- are not in compliance

4    with the policies and procedures which the police

5    department has as far as excessive use of force or

6    restraints or so forth.

7    THE COURT:  If they have that, it doesn't do you

8    any good because there's no one from Saint Vincent on

9    trial.  You see what I'm saying?

10    MR. LYONS:  I understand your point.

11    THE COURT:  As the case goes along, that's what we

12    do; we narrow things down and get to the crux of the

13    issues.  So I think that 3 is out.

14    4, any and all copies of invoices or bills served

15    upon Erie Bureau of Police by Saint Vincent for services

16    rendered to the Erie Bureau of Police -- what's your need

17    for that?

18    MR. LYONS:  Well, again, to show, basically, that

19    there was some activity or -- some activity between the

20    two, that they were both in on the excessive use of force.

21    MR. VILLELLA:  Mr. Lyons, in the first place, you

22    got a lot of this supplied to you during the criminal

23    trial.  You got the records of what Nancy Leopold said

24    happened or didn't happen.  What are you looking for in

25    terms of presenting your case?

1        THE COURT:  These are bills or invoices, and I

2    don't -- because there is not -- well, first of all, I

3    don't know what you have in your -- what you have as far as

4    the bills or invoices in your files.  But I don't know how

5    you'll use invoices and bills to prosecute a claim that you

6    were injured by excessive force.

7        MR. LYONS:  3 and 4 are just cancelled because

8    they both are one and the same.

9        THE COURT:  Why do you need the insurance company

10   information?

11       MR. LYONS:  Basically, just for billing and to

12   find out what policies that they are covered by.

13       THE COURT:  You want to know where they're going

14   to get their money to pay you?

15       MR. LYONS:  Exactly.

16       MR. VILLELLA:  I can give you something on that.

17       THE COURT:  That's very tough to use in a jury

18   trial under the rules, but you do have a right to some of

19   that information.  All right.

20       MR. LYONS:  End up at 6.

21       THE COURT:  That's 5, he's going to look into

22   that.  That doesn't require a lot of documents.  That's

23   more or less an interrogatory.

24       Code of ethics and professional conduct manual.

25       MR. VILLELLA:  We have a police manual.  We have a

1    use of force policy in writing.  Service of search

2    warrants.

3        THE COURT:  I think that policy manual is fine.

4    However, you don't have a claim against the police

5    department, so keep that in mind.  I know you can use that.

6    I think it's relevant, and I rule that it's relevant, too.

7    And that's not confidential.

8        MR. VILLELLA:  I don't think so.

9        THE COURT:  And that's relevant to his trying to

10   show whether or not these defendants violated their

11   procedures.

12       MR. LYONS:  Would this cover everything I asked

13   for as far as audio taping, videotaping?

14       MR. VILLELLA:  If there's a videotape of your

15   search or any aspect of your search or confession, we'll

16   produce it, and I think we can get you a copy of that.

17       THE COURT:  Do you think there was a videotape

18   going as you were being searched?  Do you have any

19   knowledge of that?

20       MR. LYONS:  I don't know what Saint Vincent would

21   have had at that department.  I don't know.

22       THE COURT:  It's unlikely, if that had happened in

23   an institution, but he'll check.

24       MR. LYONS:  Okay.

25       MR. VILLELLA:  Police report and dictation.

1          THE COURT:  Don't you have the police report from

2    your criminal trial?

3          MR. LYONS:  I had a police report, but when I went

4    back down to get my files, that criminal report was

5    basically jumbled.  Pages were missing.  It was incomplete.

6          THE COURT:  All right.

7          MR. LYONS:  So I don't know that I have a complete

8    copy of that.

9          MR. VILLELLA:  It's a pretty thick report, and I

10   don't know -- if he's looking for something that says we

11   beat the heck out of this guy for no good reason, I

12   guarantee you, you're not going to find that in there.

13         MR. LYONS:  We don't know what we'll find in

14   there.  I'm looking for something specific, and it's not in

15   my police report because it was taken out.

16         THE COURT:  Well, if it's a complete report, it's

17   just more cost for you, but, well, okay.

18         Complete telephonic transcription and recording of

19   calls made by any of the named defendants to George

20   Wellsby.  If there are such things -- do you know if there

21   are such things?

22         MR. VILLELLA:  If there are -- if there is any

23   contact, Mr. Wellsby would know what contact was made with

24   whom and when.

25         THE COURT:  Do you record those calls?

1      MR. VILLELLA:  Calls coming in would get recorded

2  and saved for some period of time.

3      MR. LYONS:  I didn't hear that.

4      THE COURT:  He said calls coming in are recorded

5  and saved for some period of time, but he doesn't know if

6  they're still saved.  You can check on that and see, and

7  then you can make an objection, if you want.  But on a

8  confidentiality basis for a protective order, that is not

9  valid because George Wellsby is a defendant.

10     Number 9, complete telephonic description of

11 certain calls made from any named defendants from the Erie

12 Bureau of Police to Bob's Irresistible Auto Sales.  Who is

13 that?

14     MR. VILLELLA:  That's him.

15     THE COURT:  Is that a defendant?

16     MR. LYONS:  They're not defendants, Your Honor,

17 but they were a part of the individual case.

18     THE COURT:  Here's the deal on that.  If the calls

19 were made from the Bureau of Police, he can look into that.

20 But if the calls were made from Bob's, you have to subpoena

21 him for documents like that.

22     MR. LYONS:  The calls were made by the Bureau.

23     THE COURT:  Let me talk to you about the relevance

24 on that.

25     MR. VILLELLA:  Yeah, that's a problem.

1          THE COURT:  There might be a confidentiality

2   protection that is given to the City on that because it's a

3   person not involved in the lawsuit, so talk to me about

4   what you need from there.

5          MR. LYONS:  Basically, at this time -- this

6   involved Mr. Wellsby -- there was a communication between

7   police officers that were -- that the call was made to

8   Bob's Irresistible, and they, in turn, contacted

9   Mr. Wellsby and the conference call took place.  That's

10  where Mr. Wellsby became a part -- involved in the search

11  of my vehicle.

12         THE COURT:  You don't work with Bob's

13  Irresistible, do you?

14         MR. WELLS:  No, I don't.  I have nothing to do

15  with Bob's Irresistible.

16         MR. LYONS:  He only had to deal with Bob's

17  Irresistible with regards to repairing my vehicle.

18         THE COURT:  That has to do with your underlying

19  case; that doesn't have to do with the excessive force

20  claim.

21         MR. LYONS:  That has to do with my claim involving

22  the search of my vehicle.

23         THE COURT:  But I'm trying to think -- did Bob's

24  search your vehicle?

25         MR. LYONS:  No.  Mr. Wellsby searched my vehicle.

1          THE COURT:  I'm going to rule against that one,

2    I'm afraid.

3          MR. LYONS:  Why is that, Your Honor?

4          THE COURT:  That's not relevant to the claims left

5    in the case, and there's a confidentiality problem with

6    that.

7          MR. LYONS:  If I can -- this is the only way that

8    I can prove that he searched my vehicle.  You're dismissing

9    that?

10          THE COURT:  You can only prove that Mr. Wellsby

11    searched your vehicle -- you can't ask Mr. Wellsby if he

12    searched your vehicle?

13          MR. LYONS:  I can ask him all I want, but he can

14    deny it all he want.

15          THE COURT:  He's under oath.  He can't deny it if

16    he's under oath if he did it.

17          MR. LYONS:  He can't deny it if he's under oath?

18    Yeah.  Your Honor, if he's under oath, he can deny it all

19    he like.  I mean, people lie.

20          THE COURT:  Then if he says one thing and you're

21    going to come in with what evidence to say he's wrong?

22          MR. LYONS:  This is the evidence I want to show

23    he's wrong.

24          THE COURT:  You say Bob's would know that

25    Mr. Wellsby searched it?

1    MR. LYONS:  No.  I'm saying the conference call

2  was taken between three phones, police department, Bob's

3  Irresistible to Mr. Wellsby, and there was a communication

4  between all three parties involving the search.

5    THE COURT:  Can't you get that with a

6  communication with Mr. Wellsby that was in Number 8?

7    MR. LYONS:  I can get that through the

8  communication if I had the police transcript.

9    THE COURT:  They're looking to see if they have

10  that.  But, no, all of their calls to Bob's Irresistible, I

11  cannot allow.  I just can't.  They're not in the case.  But

12  if it's a three-way call, you'll get it with what you're

13  getting in Number 8, if that exists.  Do you see what I'm

14  saying?

15    MR. LYONS:  Number 8 deals with --

16    THE COURT:  Mr. Wellsby.

17    MR. LYONS:  Yes, specifically.

18    THE COURT:  And you said it's a three-way call.

19    MR. LYONS:  I'm saying it's a three-way call.

20    THE COURT:  So he'd be on it.

21    MR. LYONS:  Okay.

22    THE COURT:  That's the only way we can get to that

23  stuff, if it exists, okay?

24    MR. LYONS:  This is dealing -- this is two

25  different calls here.  I'm not talking about the call that

1    was made directly to Mr. Wellsby.

2         THE COURT:  Yes, I know, but it says all calls

3    between February 22 and January 30 of the next year, so all

4    calls that include Mr. Wellsby that he's going to be

5    looking for.

6         MR. LYONS:  You don't understand what I'm saying.

7         THE COURT:  No, I don't.  I guess I don't.  Try

8    again.

9         MR. LYONS:  I'll try again.

10        THE COURT:  I'm listening.  I want to make the

11   right call.  Go ahead.

12        MR. LYONS:  Any calls that the police department

13   made to Mr. Wellsby specifically with Mr. Wellsby by

14   himself, I want that.  Any calls that were made to Bob's

15   Irresistible that transpired and connected Mr. Wellsby as

16   well, I want that.  That's the conference call.  Two

17   separate things.

18        THE COURT:  Except your Number 8 is broad enough

19   to include those because you're saying any calls between

20   the police department and Mr. Wellsby, and that would be a

21   call with them because he's on it.

22        MR. VILLELLA:  Here's my question.  Is Mr. Wellsby

23   still in on the allegation that he acted as an agent of the

24   police and violated the Fourth Amendment in some way?

25        THE COURT:  Yes, because Mr. Wellsby didn't move

1   to dismiss.  Mr. Wellsby didn't move to dismiss, so he's

2   still here on all the claims.

3         MR. WELLSBY:  I filed downstairs.

4         THE COURT:  You filed an Answer.

5         MR. VILLELLA:  You have to file a Motion to

6   Dismiss.

7         THE COURT:  Mr. Wellsby needs some help in that

8   regard.

9         MR. VILLELLA:  In which case he'll be out of the

10  case.

11        MR. LYONS:  Move on to Number 10.

12        MR. VILLELLA:  You want solicitations for federal

13  funding and grants.  What does that have to do with

14  anything?

15        THE COURT:  Federal funding and grants.  What's

16  that about?  You just want to know if they have enough

17  money to pay you?  You can't do that.

18        MR. LYONS:  No.  No.  No.  My claim was -- the

19  claim I made was the violation of the First Amendment which

20  was denied, and which was the federal statute 2000(b)(b),

21  2000 (c)(c).

22        THE COURT:  So that's out.

23        MR. LYONS:  But you didn't deny that.  You denied

24  the First Amendment claim on the religious issue, but you

25  did not deny the claim as far as 2000 (b)(b), 2000 (c)(c).

1          THE COURT:  I don't know what that is.

2          MS. HAYWOOD:  I think that's the Religious

3     Reformation Act.

4          THE COURT:  That's gone.  That's gone.

5          MR. LYONS:  That's gone?

6          THE COURT:  Yeah, that's gone.  10 is out.

7          MR. LYONS:  11.  Move on to 11.  Yes.

8          MR. VILLELLA:  Looking for any other suspects that

9     were looked into?

10         THE COURT:  I don't know if there are any, but you

11    can't have their files.  That's confidential.

12         MR. LYONS:  It's confidential?

13         THE COURT:  Their DNA files?  You bet you.

14         MR. LYONS:  Your Honor, I personally have the

15    documentation of some of the suspects that were involved in

16    the case, but what I wanted specifically was any of the

17    suspects that went through the same thing that I went

18    through.

19         MR. VILLELLA:  That's Heck -- you want to see if

20    anybody else was --

21         MR. LYONS:  My claim is under the equal protection

22    violation.

23         THE COURT:  So you have some of those but you

24    don't know what about those people that you have?

25         MR. LYONS:  Excuse me, Your Honor?

1          THE COURT:  You don't know what about -- you have

2     this information?

3          MR. LYONS:  I have information pertaining to some

4     of the suspects that were investigated in the case.

5          THE COURT:  Okay.

6          MR. LYONS:  But what I don't have was the

7     information -- on these suspects I do have information as

8     far as Equal Protection Act, but what I don't have is

9     information on the other suspects as far as their treatment

10    involving the search.  See, I have information pertaining

11    to suspects that were searched differently than me.  What I

12    need is information of suspects that were involved in the

13    case that were searched similar to me.

14         THE COURT:  Do you know if there are any?

15         MR. VILLELLA:  I don't know.  First I question

16    whether or not he's simply -- he's trying to undermine the

17    basis of his conviction or find exculpatory evidence.

18         THE COURT:  I think it's the equal protection

19    claim.

20         MR. VILLELLA:  To see if he was treated

21    differently in some manner?

22         THE COURT:  Yes.

23         MS. HAYWOOD:  Is that claim still in the case?

24         MR. LYONS:  Yes, it is.

25         THE COURT:  There's so many claims, it's hard to

1    keep track.  Let me ask, did you send similar production

2    requests to Defendant Van Slyke?

3            MR. LYONS:  Excuse me?

4            THE COURT:  Did you send similar requests for

5    production of documents to --

6            MR. LYONS:  No, I haven't done anything on Mr. Van

7    Slyke yet because I wasn't sure where we stood in regards

8    to his summary judgment.  Being that the judge had denied

9    me on this one initially until he made a ruling on the

10   summary judgment, I considered the same thing was going to

11   be done with Mr. Van Slyke, so I haven't sent anything to

12   him, but I intend to file one this weekend.

13           THE COURT:  He didn't know how Van Slyke was going

14   to be treated.

15           MS. SANDER:  He wasn't treated.

16           THE COURT:  But he is still in.

17           MS. SANDER:  He hasn't had anything pending in a

18   long time.

19           MR. LYONS:  I can't hear anything.  I hear

20   mumbling.

21           THE COURT:  Cynthia Sander was trying to explain

22   to me that Special Agent Van Slyke was part of the last

23   round.  I'm getting them all mixed up.  And the one that we

24   just did was on the five City defendants.

25           MR. VILLELLA:  He had a separate motion and that

1    was done earlier.

2            THE COURT:  I understand.  All right.

3            Now, what discovery, if any, do you need from

4    Mr. Lyon, Mr. Villella?

5            MR. VILLELLA:  We might send him some questions,

6    interrogatories, asking what corroborative evidence he has

7    to support the claim that he was mistreated during the

8    search and seizure.

9            THE COURT:  How about you --

10           MR. LYONS:  I received Ms. Ross --

11           THE COURT:  Ms. Haywood.

12           MR. LYONS:  Ms. Haywood's interrogatories.  I

13   received hers.

14           THE COURT:  Ms. Haywood, are you planning to

15   pursue that which Judge McLaughlin reversed me on?

16           MS. HAYWOOD:  Absolutely.  I sent interrogatories

17   with regard to two issues, primarily, the statute of

18   limitations issue as well as the issue of corroborative

19   evidence in the event the statute of limitations argument

20   eventually fails.  I was -- his responses are due to me

21   early next week.  After I received them I was intending to

22   take his deposition, and then I intend to refile a summary

23   judgment motion on the statute of limitations issue as well

24   as the substance of his claim.

25           MR. LYONS:  Your Honor, the statute of limitations

1    issue has been resolved.

2        THE COURT:  No, that's not what happened,

3    Mr. Lyons.  See, I recommended to the District Judge that

4    it would be resolved, as you remember.  But then the

5    District Judge disagreed with my recommendation and ruled

6    otherwise.

7        MR. LYONS:  Right.

8        THE COURT:  He said that there wasn't enough

9    information to make that determination, and he, in essence,

10   reopened the argument if they want to make it, if they get

11   more information.

12       MR. LYONS:  He did that?  I didn't see that.

13       THE COURT:  He did that on the final order, March

14   7.

15       MR. LYONS:  On the final order he stated that --

16   dig the final order out.  I remember distinctively that he

17   stated that because of the way the paperwork was sent to me

18   with regard to the filing --

19       THE COURT:  I'm sorry.  This wasn't the most

20   recent one.  This was the first final order.  He said it

21   was premature.

22       MR. LYONS:  Yes, because he said that looking at

23   the way the documents were sent to me, he said that would

24   be considered -- one would consider that he would have to

25   file the documents after he received everything as a whole

1  instead of filing separately.  Remember, because you had

2  dismissed it because of the reason you said he could have

3  filed it and then filed the other part later.

4          THE COURT:  We're looking for it in the file.

5  Hold on a second.

6          MR. LYONS:  I'm doing the same, and my file is so

7  thick.

8          THE COURT:  Hold on a minute and we'll find his

9  exact words and that will help.

10         MR. LYONS:  Do you know what docket number that

11  was?

12         THE COURT:  We're looking.

13         MR. LYONS:  I should have it right here.

14         THE COURT:  Document 57 in our file.  We're

15  looking for it now.  All right.  Let's take a read.

16         MR. LYONS:  67?

17         THE COURT:  55 -- 57.

18         MR. LYONS:  I have that here, yes.

19         THE COURT:  "The plaintiff filed objections to the

20  report and recommendation.  Plaintiff continues to blame

21  his failure to file this case within the statute of

22  limitations period on the delay of prison officials in

23  completing the paperwork necessary to file a motion for

24  leave to proceed IFP.  Plaintiff argues he would not have

25  filed the Complaint which he knew -- that he could not have

1    filed the Complaint which he knew was due on or before

2    February 21, 2003 because he did not have the documentation

3    from the prison necessary for his motion for leave to

4    proceed IFP.  In support of this argument plaintiff

5    attaches the instruction sheet provided to him by the Clerk

6    of Courts which states if you are unable to pay the initial

7    filing fee," and then he quotes that.

8         "Although Complaints are routinely filed every day

9    without either the filing fee or a motion to proceed IFP,

10   the instruction sheet from the Clerk of Courts could have

11   led this pro se litigant to believe he couldn't file his

12   Complaint without a motion for leave.  Given the

13   undeveloped state of the record, a dismissal based on

14   statute of limitations at this time is premature."

15        So he left it open.  So they can try to, with more

16   documentation, dismiss the case again on that basis, but

17   time is running out, Ms. Haywood.

18        MS. HAYWOOD:  Absolutely, Your Honor.  I

19   understand that.  And as soon as he responds to my

20   interrogatories -- he told me on the telephone before you

21   were on the call that he has asked for an extension, so I'm

22   curious to hear about that, though we didn't receive that

23   letter from Mr. Lyons.

24        THE COURT:  We didn't, either.  Why can't you do

25   that in 30 days?

1          MR. LYONS:  Because all my property is in my

2   property.

3          MS. HAYWOOD:  I sent these interrogatories in

4   February.

5          MR. LYONS:  I haven't had opportunities to get

6   access to my property.

7          THE COURT:  These are answers to interrogatories

8   or are these production of document requests?

9          MS. HAYWOOD:  They were both, Your Honor.

10          THE COURT:  Who is there from -- who is your

11   counselor who is there?

12          MR. LYONS:  Excuse me?

13          THE COURT:  You say you have a counselor there?

14          MR. LYONS:  Yes.

15          THE COURT:  May I speak to him or her?

16          MR. LYONS:  Yes.  Unit manager.

17          THE COURT:  His name?

18          MR. LYONS:  Mike Jenkin.

19          THE COURT:  Let me speak to him, please.

20          MR. JENKIN:  Hello?

21          THE COURT:  Mr. Jenkin?

22          MR. JENKIN:  Yes, ma'am.

23          THE COURT:  My name is Susan Baxter, Judge Baxter.

24   Mr. Lyons has a set of interrogatories and requests for

25   documents sent to him in a civil case by the U.S. Attorney.

1  And they were sent to him weeks ago.  And under the rules

2  he has 30 days to respond, and he's just told me that he

3  can't do that in 30 days because he can't get to his files.

4  What is your procedure on that, and has he requested to see

5  them?

6          MR. JENKIN:  I can tell you our procedures, ma'am.

7  We have an afternoon lieutenant who handles property

8  requests.  The procedures are the inmate request to him.

9  It usually takes a couple days.  I do not know if Inmate

10  Lyons --

11          THE COURT:  Would he be permitted to see all of

12  his legal papers?

13          MR. JENKIN:  Yes, ma'am, but he couldn't take them

14  all out.

15          THE COURT:  He could sit there and work and answer

16  these questions and work with those papers?

17          MR. JENKIN:  Pardon me, ma'am?

18          THE COURT:  He could work with these papers in a

19  room?

20          MR. JENKIN:  He's the one that wanted records

21  boxed, which is -- I don't know -- maybe 3 foot square of

22  legal property, so he's allowed to take a substantial

23  amount back to his cell.

24          THE COURT:  Can he have a table and sit in the

25  property room and work on these things for an hour or two

1    at a shot?

2            MR. JENKIN:  We can make an exception to that,

3    yes, ma'am, but that isn't common practice.

4            THE COURT:  The U.S. attorney is hand-tied to keep

5    this case going without answers to these things, and he

6    could just complain for months, "I can't do it, I can't get

7    there."

8            MR. JENKIN:  Okay.  We can set something up like

9    that.

10           MS. HAYWOOD:  Your Honor, in terms of me paying

11   for the copying, how would that work?

12           THE COURT:  Help me out on that, too.  She would

13   pay for the copying of the documents she wants.  Would you

14   just bill the U.S. Attorney?

15           MS. HAYWOOD:  My office would pay, but we need the

16   documents quickly.

17           THE COURT:  Is he still on?

18           MR. JENKIN:  Yeah.

19           MR. LYONS:  Are you asking for us to make copies?

20           THE COURT:  Yes.  Some of the documents she's

21   asking copies of, he would give them to you to make copies,

22   but he doesn't have to pay for them; she does.

23           MS. HAYWOOD:  We're not allowed to pay for

24   anything in advance, so if you would copy them and send us

25   a bill, we would pay you right away.

1        MR. JENKIN:  How much are we talking about?

2        THE COURT:  How much do you charge a copy?

3        MR. JENKIN:  We charge the inmates 10 cents a

4   page, but if it's 30, 40 pages, we can make the copies.

5        THE COURT:  And just send them.

6        MR. JENKIN:  It seems a little ridiculous to even

7   charge you for them.

8        THE COURT:  We'll see how much it is.  We don't

9   know.  Can I talk to Mr. Lyons again, please?

10        MR. JENKIN:  Yes, ma'am.

11        MR. LYONS:  I didn't hear most of the conversation

12   that was going on.

13        THE COURT:  I'll tell you what I asked him.  I

14   asked him what the procedure was for you to see your

15   property, and you heard his answer.  And then I asked him

16   if there was a way that he could have you at a table in the

17   property room for a couple hours or an hour at a time so

18   that you could work on these with your property.  And then

19   we asked and he said yes, that they could arrange -- make a

20   special exception.  And then we asked him if -- Ms. Haywood

21   asked him if he would send her the bill for the copies of

22   the documents that you will give him to copy that will

23   respond to the production of document request, and he said

24   it depends on how many there are.

25        MR. LYONS:  Okay.  Basically, that's going to be a

1   lot, because she asked for --

2        THE COURT:  I suspect her requests are limited

3   mainly to the statute of limitations.

4        MS. HAYWOOD:  It's the statute of limitations and

5   any evidence that corroborates his claim that excessive

6   force was used against him.

7        THE COURT:  By Special Agent Van Slyke.

8        MS. HAYWOOD:  By Special Agent Van Slyke.

9        MR. LYONS:  She also asked for something on

10  damages, compensatory damages, items on compensatory

11  damages.

12       MS. HAYWOOD:  I probably have a standard, any

13  diaries or any notes that relate to the incident at issue,

14  also any claims that support your claim for emotional

15  suffering, that type of request that's standard.

16       THE COURT:  Do you have documents on that?  You

17  don't have to give her things that she has.

18       MS. HAYWOOD:  You don't have to give me things,

19  obviously, that you don't have.  You don't have any medical

20  records.  I asked him for any records of any treatment he

21  received as a result of the alleged assault, that type of

22  thing.

23       THE COURT:  If you don't have those things,

24  then --

25       MR. LYONS:  Your Honor, in regard to the -- to her

31

1   request regarding her argument on the statute of

2   limitations, when I was at Huntington I did not have access

3   to a photocopy machine.  They did no copying, period.  So I

4   had to send the original -- in response to your report and

5   recommendation, I had to send the original copy of the cash

6   slip that was signed, and, I believe, the request slip that

7   was sent to the business manager to process the forms and

8   so forth.  I had to send the original copies to the court.

9   I believe I made a copy.  I'm not sure if I made a copy by

10  request, but if I hadn't, then it's there at the

11  courthouse.  How would I obtain that?

12        THE COURT:  If you don't have it in your

13  possession, you don't have to give it up.  Let me tell you

14  what I have.  We just pulled that document.

15        MR. LYONS:  I did put a notation on the bottom.

16        THE COURT:  I have an Exhibit A and it has in it a

17  certified mail -- a copy of the certified mail of the time

18  you received the letter and how it had to be forwarded to

19  you because you were no longer at Huntington and it went to

20  the Pittsburgh box office and it was received November 14,

21  2003.  We have that as Exhibit A.  Exhibit B is the

22  instruction sheet that you used.  Are you talking about

23  what you sent to the clerk's office?

24        MR. LYONS:  Yes.

25        THE COURT:  Okay.  But you don't have to respond

1    about documents you don't have.  Under the rules the only

2    things you give in response to these things are things in

3    your possession.  Then you write down on a piece of paper,

4    "You asked for documents for number 3.  I don't have those.

5    The court has them," or whatever, okay?

6            MR. LYONS:  Okay.  Because she requested it, and I

7    have a notation on the bottom saying that I could not

8    provide this to the defendant because I didn't have access

9    to a copying machine.  I provided a copy to the Court, but

10   I could not provide one to the defendants.

11           THE COURT:  Is it in your possession now?

12           MR. LYONS:  The report?  The motion?

13           THE COURT:  You didn't send me a copy.  You sent

14   me the original.

15           MR. LYONS:  I sent you originals and said I could

16   not provide a copy to the defendant because I did not have

17   access to a copy machine, but I do believe I had a copy of

18   the cash slip and request slip.  I have to go through my

19   property and look.

20           THE COURT:  What I have here is a cash slip, here

21   it is, received March 5, 2003.  This looks like an

22   original.

23           MR. LYONS:  Do you know what's written on that.

24           THE COURT:  Yes.  It says the facility number, the

25   location, I guess, where you are, 10-28 D something, date,

1    2-25-03, items to be --

2           MR. LYONS:  That's it.

3           THE COURT:  Items to be charged to my account,

4    postage for legal mail.

5           MR. LYONS:  That's it.  That's the one that she's

6    asking for to show that I mailed it out on the 25th, but I

7    couldn't mail it on the 25th -- what's the date on the

8    bottom that it that says that it went out?  What was the

9    date on the bottom of it?

10          THE COURT:  There is no date on the bottom.  What

11   it says is where it says witness signature, it says "COI

12   Kaufman refused to sign copy for clerk."

13          MR. LYONS:  Right.  That's the document.  That's

14   the document right there that she had requested.  Is there

15   a way that I can get a copy of that?  If I can get a copy

16   of it, I can make a copy of it.  Now -- I mean, I'm not at

17   Huntington anymore.  At Huntington you can't make copies.

18   Here you can make copies.  And I can provide that to her in

19   her request for documents.

20          THE COURT:  The first time you requested,

21   according to this, money for postage was on February 25th,

22   and your deadline was the 27th.

23          MR. LYONS:  Right.  I couldn't mail it out until

24   the 25th.  That's when it came back from the records

25   office.  They mailed it back to me.  They sent it back to

1    me on the 25th, and that was the day I mailed it out, the

2    same day I got it back.  I couldn't mail it on the 22nd

3    because I didn't have it.  Then I sent you, also, a request

4    slip from the business manager showing that I asked him to

5    do this specifically on the 22nd, I needed this on the

6    22nd.

7           THE COURT:  I'm looking for that.

8           MR. LYONS:  There's a request slip there with

9    that.

10          THE COURT:  You don't have copies of any of this

11   stuff, Ms. Haywood?

12          MR. LYONS:  I have to go through my property.

13          THE COURT:  I'm asking Ms. Haywood, do you have

14   any copies of this stuff?

15          MS. HAYWOOD:  No, Your Honor.

16          MR. LYONS:  I couldn't send her a copy.  I put

17   that on the notation of my Answer to the Court.  I put that

18   on the bottom.  I said I could not send it to her, but I do

19   have a copy for myself.  Now I have to look through my

20   property to see if it's still there.  But if it's not,

21   being that you do have a copy, I would like to retain it,

22   if possible, to make a copy.

23          MS. HAYWOOD:  I'll be in Erie within a week.  I

24   can make a copy.

25          THE COURT:  You can come up here and copy it.

1          THE COURT:  I don't see anything that you're

2    saying.  I see an inmate request to staff member, but

3    that's dated the 25th, not the 22nd.

4          MR. LYONS:  The 25th?

5          THE COURT:  Yes.

6          MR. LYONS:  That was to the business manager,

7    right?

8          THE COURT:  Yes.

9          MR. LYONS:  That one she needs, too.  That shows I

10   asked for these documents to go out, I believe it was.

11         THE COURT:  It says, "I request to anticipate a

12   charge to my account for legal mail.  This charge is

13   pursuant to the procedure of directive 803.  My account

14   status is indigent."

15         MR. LYONS:  Yes, that's what she would need, too.

16   I guess that would satisfy her Request for Production of

17   Documents on that issue.  And I would look for the other

18   issue dealing with the business manager as well, that I had

19   asked him to complete the copies before the 22nd.

20         THE COURT:  Sometimes these things --

21         MR. LYONS:  I know I have the grievance for that.

22         THE COURT:  Oh, good, you give her copies of that.

23   That will help.

24         MR. LYONS:  Yes, that will help in regards to

25   that.  I think I have the grievance and I have the response

1  from the superintendent saying the Court can grant me an

2  extension of time.  I was explaining to him you can't get

3  an extension of time on a deadline like this.  So they

4  denied my grievance, but I do have that, and I will -- I

5  believe I have that.

6          THE COURT:  I don't see any other documents.  I

7  don't see anything else here.

8          MR. LYONS:  Then I'll look at my paperwork and see

9  what I have.  Thank you, Your Honor, on that issue.

10          THE COURT:  Sure.  Ms. Haywood, you just come on

11  to our chambers to get a copy of the file because it won't

12  be downstairs; we're working it.

13          MS. HAYWOOD:  Okay, I certainly will.

14          THE COURT:  You also have to answer the

15  interrogatories, which are questions.  You just have to

16  answer them like you would a question, all right?

17          MR. LYONS:  Yes, ma'am.

18          THE COURT:  And if you can sit in that work room

19  with the documents and they give you an hour or two at a

20  shot -- how many of them are there?

21          MR. LYONS:  In regards to the interrogatories?

22          THE COURT:  Yes.  How many are there?

23          MS. HAYWOOD:  I think about 18.

24          THE COURT:  18?

25          MS. HAYWOOD:  Approximately.

1        THE COURT:  You can get started on that.  I'm

2  going to give you a little more time but not much.

3        MR. LYONS:  Okay.  That's fine.

4        THE COURT:  This man who is there with you, this

5  man, unit manager, he told me they could make those

6  arrangements.

7        MR. LYONS:  I would like to actually base -- do

8  you understand my handwriting, Ms. Haywood, plus the

9  questions, I would like to limit them to exactly the page

10  of my answer.  I would like to limit them to the page you

11  sent me.  You gave me plenty of space, but my handwriting

12  would probably take a lot of that space up, so I would like

13  to type it, if that wouldn't be no problem.

14        MS. HAYWOOD:  Whatever.  I can understand your

15  writing.  You write fine.  You can write on the backs, too,

16  if you would like.

17        THE COURT:  That might be easier, because I don't

18  know if you can arrange to have a typewriter and --

19        MR. LYONS:  The typewriter is here, but I'll have

20  to arrange a day.

21        THE COURT:  Why don't you just handwrite it, and

22  that way -- time is of the essence.

23        MR. LYONS:  Okay.  I'll do that.

24        MS. HAYWOOD:  If Ms. Haywood is planning to do

25  another dispositive motion, we have to get moving.

1          MR. LYONS:  That's fine.

2          THE COURT:  When are they due?

3          MS. HAYWOOD:  I sent them March 18.

4          THE COURT:  Probably the 21st.

5          MR. LYONS:  No, they were due on the 18th.  I

6     received them, because I remember --

7          THE COURT:  All right.

8          MR. LYONS:  I do have a copy.  It was due on the

9     18th, today.

10          THE COURT:  Then you have to respond to her.  She

11     has to receive a response by April 15, tax day.

12          MR. LYONS:  April 15?

13          THE COURT:  Yes.

14          MR. LYONS:  I'll have it before then.

15          THE COURT:  Excellent.

16          MR. VILLELLA:  If she's going to file a

17     dispositive motion, we'll join in that.

18          MR. LYONS:  I could not hear that, Your Honor.

19     Say that again.

20          THE COURT:  Attorney Villella said if Attorney

21     Haywood files a dispositive motion on that, he's going to

22     join in it.

23          MR. VILLELLA:  I assume Mr. Wellsby would, too.

24          MR. LYONS:  A dispositive motion on the

25     interrogatories?

1           THE COURT:  On the statute of limitations issue,

2    if she files another one after she looks --

3           MR. LYONS:  He's going to join.

4           THE COURT:  He's going to join in, and so is

5    Mr. Wellsby, so there may be another round of trying to get

6    rid of the case before trial based on statute of

7    limitations after they see these documents, okay?

8           MR. LYONS:  All right.

9           MR. VILLELLA:  That's what they're telling me.

10          MS. HAYWOOD:  Your Honor, can I have until April

11   30th to take his deposition, then?

12          THE COURT:  Yes.  And you understand what that is,

13   Mr. Lyons?

14          MR. LYONS:  I'm familiar with a deposition.  I

15   didn't know she wanted to take a deposition.

16          THE COURT:  I didn't, either, but she just told us

17   now.

18          MR. LYONS:  Okay.  April 30th.

19          THE COURT:  By April 30th.

20          MS. HAYWOOD:  If you get me the interrogatories

21   before that, I'll set it up as soon as I can.

22          MR. LYONS:  Okay.  That would be fine.

23          THE COURT:  Mr. Villella, I'm going to give you

24   until April 15th as well.

25          MR. VILLELLA:  To respond to his discovery.

1       THE COURT:  To respond to this discovery as well.

2       MR. LYONS:  To respond to what?

3       THE COURT:  The documents we went through today,

4  so he's going to send you what he has, and you should be

5  receiving it sometime that same week.

6       MR. LYONS:  He's going to be asking

7  interrogatories.

8       THE COURT:  No.  The answers to the ones you sent

9  him.  The documents you've asked from him.

10      MR. LYONS:  Mr. Villella, are you going to be

11  sending me a copy of or -- a request for documents?

12      MR. VILLELLA:  I'm tending to think not.  I don't

13  think you have any documents that you're not going to

14  produce for Attorney Haywood that I would ask for because

15  you're saying these people are all together engaged in this

16  action against you.  I think that's going to cover the same

17  ground.

18      THE COURT:  He doesn't think he's going to ask you

19  for anything more.

20      MR. LYONS:  How about Mr. Wellsby?

21      MR. WELLSBY:  I'm not asking anything.  I can't

22  even understand why I'm here, because I had no contact with

23  the police officer or anything at that time.  But I'm being

24  accused.

25      THE COURT:  Did you get a copy of his Answer?

1        MR. LYONS:  Yes, I did.

2        THE COURT:  Okay.  So that means that you should

3   be getting some documents of some kind from Attorney

4   Villella the same week that you are sending your stuff to

5   Attorney Haywood.  Are you with me?

6        MR. LYONS:  Yes.

7        THE COURT:  Okay.  That means, for the record,

8   Motion for Protective Order regarding Plaintiff's Request

9   for Production, document number -- we don't know -- what's

10  the next document number?

11       MS. SANDER:  Guessing 106.

12       THE COURT:  Guessing it's 106, docket entry 106 is

13  granted in part and denied in part as specified in the

14  hearing of March 18, 2005.  That will take care of it.  All

15  right.

16       Now, we are going to have a dispositive motion

17  deadline.  I'm going to give you until May 27th to file a

18  dispositive motion on this issue.

19       MR. LYONS:  Me?

20       THE COURT:  No, the statute of limitations issue

21  for the defendants -- and everything.  We're not going to

22  have any more dispositive motions after this.

23       MS. HAYWOOD:  So I can include whatever?

24       THE COURT:  That's right.

25       MR. LYONS:  What's the day?

1          THE COURT:  May 27, until they file it.  Then I

2     will give you, to respond to that, until June 24th.

3          MR. LYONS:  Okay.

4          THE COURT:  All right.

5          MR. LYONS:  All right.

6          THE COURT:  Okay.

7          MR. LYONS:  Your Honor, there's one thing I'd like

8     to cover here.

9          THE COURT:  All right.

10         MR. LYONS:  For the record, `because it hasn't been

11    decided in the judge's response to the report and

12    recommendation.

13         THE COURT:  His is the actual order.  His is the

14    big kahuna, so keep that in mind.

15         MR. LYONS:  Mr. Villella had filed an exception.

16         THE COURT:  But it was denied.  It was denied on

17    March 7th.

18         MR. LYONS:  Excuse me?

19         THE COURT:  It was denied on March 7.

20         MR. LYONS:  The exception was denied?

21         THE COURT:  Yes, sir.

22         MR. LYONS:  Because I didn't receive anything on

23    that.

24         THE COURT:  Well, that's because it just happened,

25    and you know the clerk's office; it will take a week to get

1    to you.

2         MR. LYONS:  Okay.  Thank you.

3         THE COURT:  You should be getting it shortly.

4         MR. LYONS:  I just wanted to cover that for the

5    record here.

6         THE COURT:  Okay.  I think that's everything.

7         Anything else, Ms. Haywood?

8         MS. HAYWOOD:  No, Your Honor.

9         THE COURT:  Mr. Lyons?

10        MR. LYONS:  No.

11        THE COURT:  All discovery will close on April 30.

12        MR. LYONS:  All discovery will close on April 30?

13        THE COURT:  That's correct.

14        MR. LYONS:  Oh, boy.  I got to get this out of the

15   way then.  Okay.

16        THE COURT:  All right.

17        MR. LYONS:  Yes.

18        THE COURT:  Good.  So you have some time to think

19   about anything else you need.

20        MR. LYONS:  Yeah, I have to do that right now.

21        THE COURT:  You know what, this is a perfect time,

22   since you're in that room looking at all your documents,

23   you're golden.  That will tell you if you need anything

24   else.

25        MR. LYONS:  Okay.

1          THE COURT:  All right?

2          MR. LYONS:  Yes, ma'am.

3          THE COURT:  You know what you're getting, if it's

4    available, from the City defendants.

5          Anything else, Mr. Villella?

6          MR. VILLELLA:  I don't believe so, no.

7          THE COURT:  At this time Mr. Wellsby --

8          MR. WELLSBY:  No.

9          MS. HAYWOOD:  Your Honor, one other thing.  It

10   doesn't relate to me, but Mr. Villella may want to

11   determine how Mr. Lyons is going to pay for those

12   documents.

13         MR. LYONS:  That's a good question.

14         THE COURT:  I'll tell you what.  Here's what I

15   suggest, Mr. Villella.  See how much there is, and if

16   there's a goodness of heart, if it's not too much, just

17   send it to him, because that will keep us moving.

18         MR. VILLELLA:  Might be in short supply with him

19   over there.

20         THE COURT:  Yeah, I know.  If there's a ton -- the

21   City doesn't like you a lot, Mr. Lyons, so they may not

22   give you a break.  If there isn't, you can send the

23   documents with a bill and that can be part of the -- then

24   you have to pay it, Mr. Lyons.  That's all.

25         MR. LYONS:  That will be part of the --

1        THE COURT:  No.  The Form of Poplis means you have

2   to pay for the expenses of the litigation.  You can send it

3   to your account and have it paid.  And if it's not paid and

4   it comes time for trial, I may, you know, order that you

5   pay it, so just get it paid.  But the price per page is

6   not -- it shouldn't be a lot.

7        MR. LYONS:  Okay.  All right.  That will work, I

8   suppose.  Okay.  Is there anything else?

9        MR. VILLELLA:  No, not right now.

10        THE COURT:  Unless you don't want all the

11   documents.

12        MR. LYONS:  No, I would like to review the

13   documents and see what I -- basically, if I -- I would like

14   to have the documents.

15        THE COURT:  All right.  All right.  It's worth the

16   money, probably.  I agree.  Okay.

17        MR. LYONS:  Transcripts and tapes, how do we do

18   that?

19        THE COURT:  He's going to check and see if they're

20   there, and then he'll give you a copy of the tape.

21        MR. VILLELLA:  If we have a tape, we'll give it to

22   him.

23        THE COURT:  So you'll have to play it on whatever

24   you have.

25        MR. LYONS:  Okay.  All right.  Thank you, Your

1   Honor.

2        THE COURT:  All right.  And, Mr. Wellsby, I can't

3   urge you strongly enough to hire an attorney.  It just

4   makes life easier for everybody involved.  But do as you

5   have to do.

6        We're adjourned.  Thank you.

7        MS. HAYWOOD:  Thank you, Your Honor.

8        MR. LYONS:  Thank you, Your Honor.

9

10       (Hearing was concluded at 11:13 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

# C E R T I F I C A T I O N

2

3

4    I, Kay Trigilio, a Court Reporter in and for the

5    Commonwealth of Pennsylvania, do hereby certify that the

6    foregoing is a true and accurate transcript of my

7    stenographic notes in the above-captioned matter.

8

9

10

11

12    *Kay Trigilio*
Kay Trigilio
Registered Professional Reporter
13    and Notary Public
Erie County, Pennsylvania

14

15    Dated *August 26, 2005*

16

17    NOTARIAL SEAL
KAY TRIGILIO, Notary Public
City of Erie, Erie County
My Commission Expires Dec. 16, 2008

18

19

20

21

22

23

24

25

## 0

03-75 - 2:6
03-cv-75 - 1:5

## 1

1 - 6:12, 7:6
10 - 19:11, 20:6, 30:3
10-28 - 33:25
106 - 42:11, 42:12
10:30 - 1:12
11 - 20:7
1177 - 1:8
11:13 - 47:10
14 - 32:20
15 - 39:11, 39:12
15219 - 1:23
15th - 40:24
16501 - 1:20
16504 - 1:9
18 - 1:12, 37:23, 37:24, 39:3, 42:14
18th - 39:5, 39:9

## 2

2-25-03 - 34:1
2000 - 19:21, 19:25
2000(b)(b - 19:20
2003 - 26:2, 32:21, 33:21
2005 - 1:12, 42:14
21 - 26:2
21st - 39:4
22 - 18:3
22nd - 35:2, 35:5, 35:6, 36:3, 36:19
24th - 43:2
25th - 34:6, 34:7, 34:21, 34:24, 35:1, 36:3, 36:4
27 - 43:1
27th - 34:22, 42:17

## 3

3 - 9:4, 10:13, 11:7, 28:21, 33:4
30 - 18:3, 26:25, 28:2, 28:3, 30:4, 44:11, 44:12
30th - 40:11, 40:18, 40:19

## 4

4 - 10:14, 11:7
40 - 30:4
400 - 1:22
42:1983 - 1:7

## 5

5 - 11:21, 33:21
525 - 1:19
55 - 25:17
57 - 25:14, 25:17

## 6

6 - 11:20
626 - 1:19
67 - 25:16

## 7

7 - 24:14, 43:19
700 - 1:22
7th - 43:17

## 8

8 - 17:6, 17:13, 17:15, 18:18
803 - 36:13

## 9

9 - 14:10

## A

a - 2:1, 2:19, 2:22, 2:23, 2:24, 3:12, 3:20, 3:22, 4:6, 4:14, 5:5, 5:8, 5:17, 5:18, 6:5, 6:8, 6:20, 6:21, 7:10, 8:12, 9:2, 9:6, 9:8, 9:16, 9:25, 10:22, 11:5, 11:17, 11:18, 11:22, 11:25, 12:4, 12:14, 12:16, 12:17, 13:3, 13:7, 13:9, 13:16, 14:7, 14:8, 14:9, 14:15, 14:17, 14:25, 15:1, 15:2, 15:6, 15:10, 16:5, 17:3, 17:5, 17:12, 17:18, 17:19, 18:20, 19:5, 22:9, 22:17, 22:25, 23:22, 24:25, 25:5, 25:8, 25:15, 25:23, 26:9, 26:12, 26:13, 27:13, 27:24, 27:25, 28:9, 28:18, 28:22, 28:24, 29:1, 29:25, 30:2, 30:3, 30:6, 30:16, 30:17, 30:19, 30:25, 31:12, 31:21, 32:3, 32:9, 32:15, 32:16, 32:17, 33:3, 33:7, 33:9, 33:13, 33:16, 33:17, 33:20, 34:15, 34:16, 35:3, 35:8, 35:16, 35:19, 35:21, 35:22, 35:23, 35:24, 36:11, 37:3, 37:11, 37:16, 37:19, 38:2, 38:12, 38:18, 38:20, 39:8, 39:11, 39:16, 39:21, 40:14, 40:15, 41:11, 41:25, 42:16, 42:17, 43:25, 44:21, 45:13, 45:16, 45:20, 45:21, 45:22, 45:23, 46:6, 46:20, 46:21, 48:4, 48:6
A - 9:9, 32:16, 32:21, 39:24, 48:1
able - 4:24
about - 7:14, 7:18, 7:21, 9:23, 14:23, 15:3, 17:25, 19:16, 20:24, 21:1, 23:9, 26:22, 30:1, 32:22, 33:1, 37:23, 41:20, 44:19
above - 48:7
above-captioned - 48:7
Absolutely - 23:16, 26:18
access - 27:6, 32:2, 33:8, 33:17
according - 34:21
account - 34:3, 36:12, 36:13, 46:3
accurate - 48:6
accused - 41:24
Act - 20:3, 21:8
acted - 18:23
action - 2:6, 41:16
activity - 10:19
actual - 43:13
actually - 9:7, 38:7
adjourned - 47:6
advance - 29:24
affairs - 6:13
affecting - 8:21
afford - 4:20
afraid - 16:2
after - 7:12, 24:25, 40:2, 40:7, 42:22
After - 23:21
afternoon - 28:7
again - 10:18, 18:8, 18:9, 26:16, 30:9, 39:19
against - 9:24, 10:2, 12:4, 16:1, 31:6, 41:16

Agent - 1:7, 2:16, 22:22, 31:7, 31:8
agent - 5:16, 18:23
ago - 28:1
agree - 8:20, 46:16
agreement - 9:20
ahead - 18:11
al - 2:7
All - 2:25, 3:10, 11:19, 13:6, 23:2, 25:15, 39:7, 40:8, 42:14, 43:4, 43:5, 43:9, 44:11, 44:12, 44:16, 45:1, 46:7, 46:15, 46:25, 47:2
all - 4:3, 4:4, 4:7, 4:15, 4:18, 4:19, 4:20, 5:5, 5:10, 6:13, 10:14, 11:2, 16:13, 16:14, 16:18, 17:4, 17:10, 18:2, 18:3, 19:2, 22:23, 27:1, 28:11, 28:14, 37:16, 41:15, 44:22, 45:24, 46:10
allegation - 5:17, 18:23
alleged - 6:10, 31:21
allegedly - 5:16
allow - 17:11
allowed - 8:23, 28:22, 29:23
along - 3:12, 3:17, 10:11
already - 3:17
also - 2:12, 3:25, 5:3, 31:9, 31:14, 35:3, 37:14
Although - 26:8
Am - 1:12, 47:10
Amendment - 18:24, 19:19, 19:24
amount - 28:23
an - 5:20, 5:21, 11:23, 12:23, 14:7, 18:23, 19:4, 26:21, 28:7, 28:25, 29:2, 30:17, 32:16, 33:21, 36:2, 37:1, 37:3, 37:19, 43:15, 47:3
and - 1:9, 1:13, 2:2, 2:3, 2:4, 2:10, 2:11, 3:3, 3:13, 3:14, 3:16, 3:17, 3:22, 3:23, 4:15, 4:16, 4:17, 4:19, 4:21, 4:25, 5:3, 5:4, 5:7, 5:9, 5:14, 5:15, 5:17, 5:18, 6:13, 7:3, 8:8, 8:19, 8:22, 8:24, 9:1, 9:11, 10:4, 10:12, 10:14, 11:1, 11:5, 11:7, 11:8, 11:11, 11:24, 12:6, 12:16, 12:25, 13:9, 13:14, 13:18, 13:24, 14:2, 14:5, 14:6, 15:8, 15:9, 16:5, 16:20, 17:3, 18:3, 18:15, 18:20, 18:24, 19:13, 19:15, 19:20, 22:25, 23:8, 23:22, 24:5, 24:9, 25:3, 25:6, 25:8, 25:9, 25:20, 26:7, 27:24, 28:2, 28:4, 28:15, 28:16, 28:24, 28:25, 29:5, 29:24, 30:15, 30:19, 30:23, 31:4, 32:4, 32:6, 32:7, 32:16, 32:18, 32:19, 32:20, 33:6, 33:15, 33:18, 33:19, 34:22, 35:1, 35:25, 36:25, 37:4, 37:8, 37:19, 38:18, 38:21, 40:4, 41:4, 42:13, 42:21, 43:11, 43:25, 45:15, 45:23, 46:3, 46:13, 46:17, 46:19, 46:20, 48:4, 48:6, 48:13
And - 2:12, 2:13, 5:7, 6:6, 12:7, 12:9, 17:18, 22:23, 26:19, 28:1, 30:5, 30:15, 30:18, 30:20, 34:18, 36:17, 37:18, 40:12, 46:3, 47:2
and/or - 3:15
another - 3:3, 38:25, 40:2, 40:5
answer - 28:15, 30:15, 37:14, 37:16, 38:10
Answer - 4:1, 19:4, 35:17, 41:25
answers - 27:7, 29:5, 41:8

anticipate - 36:11
any - 5:16, 6:14, 7:7, 7:13, 7:15, 8:10, 10:8, 10:14, 12:15, 12:18, 13:19, 13:22, 14:11, 18:19, 20:8, 20:10, 20:16, 21:14, 23:3, 31:5, 31:12, 31:13, 31:14, 31:19, 31:20, 35:10, 35:14, 37:6, 41:13, 42:22
Any - 18:12, 18:14
anybody - 20:20
anymore - 34:17
Anyone - 2:18, 3:8
anyone - 2:25, 3:10
Anything - 44:7, 45:5
anything - 6:9, 8:7, 9:24, 10:1, 19:14, 22:6, 22:11, 22:17, 22:19, 29:24, 36:1, 37:7, 41:19, 41:21, 41:23, 43:22, 44:19, 44:23, 46:8
anyway - 5:3
Approximately - 37:25
April - 39:11, 39:12, 40:10, 40:18, 40:19, 40:24, 44:11, 44:12
Are - 29:19, 32:22, 42:5
are - 2:5, 2:22, 3:4, 3:12, 3:16, 4:11, 4:24, 5:20, 6:17, 7:11, 8:21, 9:1, 9:19, 9:25, 10:3, 10:24, 11:1, 11:7, 11:8, 11:12, 13:20, 13:21, 13:22, 14:4, 20:10, 21:14, 23:14, 23:20, 26:6, 26:8, 27:7, 27:8, 28:8, 30:1, 30:24, 31:2, 33:2, 33:25, 37:15, 37:20, 37:22, 39:2, 41:10, 41:15, 42:4, 42:16
aren't - 4:24
argues - 25:24
argument - 23:19, 24:10, 26:4, 32:1
arrange - 30:19, 38:18, 38:20
arrangements - 38:6
arrested - 8:10
As - 10:11
as - 4:6, 5:12, 5:17, 5:19, 6:3, 8:9, 10:5, 11:3, 12:13, 12:18, 18:15, 18:23, 19:25, 21:7, 21:8, 21:9, 23:18, 23:23, 23:24, 24:4, 24:25, 26:19, 31:21, 32:21, 36:18, 40:21, 40:24, 41:1, 42:13, 47:4
ask - 4:4, 4:18, 5:7, 5:9, 16:11, 16:13, 22:1, 41:14, 41:18
asked - 5:2, 5:17, 12:12, 26:21, 30:13, 30:14, 30:15, 30:19, 30:20, 30:21, 31:1, 31:9, 31:20, 33:4, 35:4, 36:10, 36:19, 41:9
asking - 6:6, 8:6, 8:7, 9:10, 23:6, 29:19, 29:21, 34:6, 35:13, 41:6, 41:21
aspect - 12:15
assault - 31:21
associated - 9:19
assume - 39:23
at - 1:12, 3:6, 4:22, 7:22, 8:4, 8:22, 9:1, 9:6, 9:23, 10:3, 11:20, 12:21, 15:5, 24:22, 26:14, 29:1, 30:16, 30:17, 31:13, 32:2, 32:10, 32:19, 34:16, 37:8, 37:19, 41:23, 44:22, 47:10
At - 7:9, 34:17, 45:7
attaches - 26:5
attorney - 2:9, 4:15, 29:4, 47:3
Attorney - 2:10, 27:25,

1

29:14, 39:20, 41:14, 42:3, 42:5
**Attorney's** - 1:22, 2:16
**audio** - 12:13
**Auto** - 14:12
**available** - 45:4
**away** - 29:25

# B

**B** - 32:21
**b)(b** - 19:25
**back** - 13:4, 28:23, 34:24, 34:25, 35:2
**backs** - 38:15
**base** - 38:7
**based** - 26:13, 40:6
**basically** - 10:18, 13:5, 46:13
**Basically** - 11:11, 15:5, 30:25
**basis** - 5:8, 14:8, 21:17, 26:16
**Baxter** - 1:12, 27:23
**Be** - 1:12
**be** - 4:16, 4:18, 5:21, 6:21, 7:3, 7:8, 8:3, 8:6, 8:14, 8:17, 8:20, 8:21, 9:18, 15:1, 17:20, 18:4, 18:20, 19:9, 22:11, 22:14, 24:4, 24:24, 28:11, 30:25, 32:18, 34:1, 34:3, 35:23, 37:12, 38:13, 38:17, 40:5, 40:22, 41:4, 41:6, 41:10, 42:3, 44:3, 45:18, 45:23, 45:25, 46:6
**beat** - 13:11
**became** - 15:10
**Because** - 7:25, 27:1, 33:6, 43:22
**because** - 3:17, 4:1, 4:11, 4:19, 4:24, 5:1, 9:1, 9:16, 9:25, 10:8, 11:2, 11:7, 13:15, 14:9, 15:2, 18:19, 18:21, 18:25, 22:7, 24:17, 24:22, 25:1, 25:2, 26:2, 28:3, 31:1, 32:19, 33:8, 33:16, 35:3, 37:11, 38:17, 39:6, 41:14, 41:22, 43:10, 43:24, 45:17
**been** - 3:13, 5:11, 6:10, 9:8, 24:1, 43:10
**before** - 1:13, 7:13, 9:5, 26:1, 26:20, 36:19, 39:14, 40:6, 40:21
**Being** - 22:8
**being** - 12:18, 35:21, 41:23, 32:9, 33:17, 36:10, 37:5, 45:6
**bet** - 20:13
**between** - 8:8, 10:19, 15:6, 17:2, 17:4, 18:3, 18:19
**big** - 43:14
**bill** - 29:14, 29:25, 30:21, 45:23
**billing** - 11:11
**bills** - 10:14, 11:1, 11:4, 11:5
**blame** - 25:20
**blood** - 5:14
**Bob's** - 14:12, 14:20, 15:8, 15:12, 15:15, 15:16, 15:23, 16:24, 17:2, 17:10, 18:14
**both** - 10:20, 11:8, 27:9
**bottom** - 32:15, 33:7, 34:8, 34:9, 34:10, 35:18
**box** - 32:20
**boxed** - 28:21
**boy** - 44:14
**break** - 45:22
**bring** - 9:24
**bringing** - 4:12, 10:1

**broad** - 18:18
**Building** - 1:19
**Bureau** - 10:15, 10:16, 14:12, 14:19, 14:22
**business** - 32:7, 35:4, 36:6, 36:18
**Business** - 1:8
**But** - 8:20, 11:4, 14:7, 14:20, 15:23, 17:10, 17:11, 19:23, 21:6, 22:16, 24:4, 32:25, 35:20, 41:23, 43:16, 46:5, 47:4
**but** - 3:25, 6:3, 7:15, 10:2, 11:18, 12:23, 13:3, 13:17, 14:5, 14:17, 16:13, 18:2, 19:24, 20:10, 20:16, 20:23, 21:8, 22:12, 26:16, 28:13, 29:3, 29:15, 29:22, 30:4, 32:10, 33:9, 33:17, 34:6, 35:18, 36:2, 37:4, 38:2, 38:11, 38:19, 40:16, 45:10
**by** - 1:13, 3:3, 3:21, 3:24, 4:2, 5:10, 5:15, 5:16, 10:15, 11:6, 11:12, 13:19, 14:22, 18:13, 26:5, 27:25, 32:9, 39:11
**By** - 1:24, 31:7, 31:8, 40:19

# C

**C** - 48:1
**c)(c** - 19:21, 19:25
**call** - 2:2, 15:7, 15:9, 17:1, 17:12, 17:18, 17:19, 17:25, 18:11, 18:16, 18:21, 26:21
**calls** - 13:19, 13:25, 14:4, 14:11, 14:18, 14:20, 14:22, 17:10, 17:25, 18:2, 18:4, 18:12, 18:14, 18:19
**Calls** - 14:1
**came** - 34:24
**Can** - 28:24, 30:9
**can** - 3:24, 6:8, 7:7, 8:12, 11:16, 12:5, 12:16, 14:6, 14:7, 14:19, 16:7, 16:8, 16:10, 16:13, 16:18, 17:7, 17:22, 26:15, 28:6, 29:2, 29:8, 30:4, 34:15, 34:16, 34:18, 35:24, 35:25, 37:1, 37:18, 38:1, 38:14, 38:15, 38:18, 40:10, 40:21, 42:23, 45:22, 45:23, 46:2
**can't** - 5:21, 9:24, 16:11, 16:15, 16:17, 17:11, 19:17, 20:11, 22:19, 26:24, 28:3, 29:6, 34:17, 37:2, 41:21, 47:2
**Can't** - 17:5
**cancelled** - 11:7
**cannot** - 17:1
**captioned** - 48:7
**care** - 42:14
**case** - 2:2, 2:20, 3:12, 3:16, 4:6, 6:16, 7:21, 9:17, 9:25, 10:11, 10:25, 14:17, 15:19, 16:5, 17:11, 19:9, 19:10, 20:16, 21:4, 21:13, 21:23, 25:21, 26:16, 27:25, 29:5, 40:6
**cash** - 32:5, 33:18, 33:20
**Cause** - 1:7
**cell** - 28:23
**Center** - 8:9
**cents** - 30:3
**certain** - 14:11
**certainly** - 37:13
**certified** - 32:17
**certify** - 48:5
**cetera** - 6:8
**chambers** - 37:11
**charge** - 30:2, 30:3, 30:7,

36:12
**charged** - 7:22, 8:22, 34:3
**check** - 8:19, 12:23, 14:6, 46:19
**City** - 1:18, 5:17, 6:4, 8:8, 9:12, 15:2, 22:24, 45:4, 45:21
**City's** - 6:7
**civil** - 2:6, 4:6, 27:25
**Civil** - 1:4, 1:7
**claim** - 6:4, 6:20, 9:2, 11:5, 12:4, 15:20, 15:21, 19:18, 19:19, 19:24, 19:25, 20:21, 21:19, 21:23, 23:7, 23:24, 31:5, 31:14
**claims** - 16:4, 19:2, 21:25, 31:14
**Clerk** - 26:5, 26:10
**clerk** - 34:12
**clerk's** - 32:23, 43:25
**close** - 44:11, 44:12
**Code** - 11:24
**Coi** - 34:11
**coincide** - 9:21
**collect** - 8:24
**collected** - 8:9
**collection** - 5:14
**come** - 16:21, 35:25, 37:10
**comes** - 46:4
**coming** - 14:1, 14:4
**commencing** - 1:12
**committed** - 6:11
**common** - 29:3
**Commonwealth** - 1:14, 48:5
**communication** - 15:6, 17:3, 17:6, 17:8
**company** - 11:9
**compensatory** - 31:10
**complain** - 29:6
**Complaint** - 25:25, 26:1, 26:12
**Complaints** - 26:8
**Complete** - 13:18
**complete** - 6:12, 13:7, 13:16, 14:10, 36:19
**completing** - 25:23
**compliance** - 10:3
**concluded** - 47:10
**conduct** - 11:24
**conference** - 2:8, 2:19, 2:22, 15:9, 17:1, 18:16
**confession** - 12:15
**confidential** - 12:7, 20:11, 20:12
**confidentiality** - 6:21, 14:8, 15:1, 16:5
**connected** - 18:15
**consider** - 24:24
**considered** - 22:10, 24:24
**contact** - 13:23, 41:22
**contacted** - 15:8
**continues** - 25:20
**contract** - 7:12
**conversation** - 2:14, 30:11
**conviction** - 21:17
**copied** - 4:19
**copies** - 4:18, 4:20, 10:14, 29:19, 29:21, 30:4, 30:21, 32:8, 34:17, 34:18, 35:10, 35:14, 36:19, 36:22
**copy** - 12:16, 13:8, 29:24, 30:2, 30:22, 32:5, 32:9, 32:17, 33:9, 33:13, 33:16, 33:17, 34:12, 34:15, 34:16, 35:16, 35:19, 35:21, 35:22, 35:24, 35:25, 37:11, 39:8, 41:1, 41:25, 46:20
**copying** - 4:7, 4:9, 4:21, 29:11, 29:13, 32:3, 33:9
**correct** - 4:11, 44:13
**corroborates** - 31:5

**corroborative** - 23:6, 23:18
**cost** - 5:1, 13:17
**costs** - 4:7, 4:10, 4:21
**could** - 25:2, 25:25, 26:10, 28:15, 28:18, 29:6, 30:16, 30:18, 30:19, 33:7, 33:10, 33:15, 35:18, 38:5, 39:18
**couldn't** - 4:19, 26:11, 28:13, 34:7, 34:23, 35:2, 35:16
**counselor** - 27:11, 27:13
**County** - 3:6, 3:7, 48:13
**couple** - 28:9, 30:17
**Court** - 1:1, 1:13, 2:1, 2:13, 2:18, 2:22, 2:25, 3:4, 3:7, 3:10, 3:18, 4:11, 5:24, 6:1, 6:5, 6:12, 6:21, 6:25, 7:2, 7:6, 7:17, 7:21, 7:25, 8:3, 8:12, 8:16, 8:19, 9:4, 9:10, 9:16, 9:22, 10:7, 10:11, 11:1, 11:9, 11:13, 11:17, 11:21, 12:3, 12:9, 12:17, 12:22, 13:1, 13:6, 13:16, 13:25, 14:4, 14:15, 14:18, 14:23, 15:1, 15:12, 15:18, 15:23, 16:1, 16:4, 16:10, 16:15, 16:20, 16:24, 17:5, 17:9, 17:16, 17:18, 17:20, 17:22, 18:2, 18:7, 18:10, 18:18, 18:25, 19:4, 19:7, 19:15, 19:22, 20:1, 20:4, 20:6, 20:10, 20:13, 20:23, 21:1, 21:5, 21:14, 21:16, 21:22, 21:25, 22:4, 22:13, 22:16, 22:21, 23:2, 23:9, 23:11, 23:14, 24:2, 24:8, 24:13, 24:19, 25:4, 25:8, 25:12, 25:14, 25:17, 25:19, 26:24, 27:7, 27:10, 27:13, 27:15, 27:17, 27:19, 27:21, 27:23, 28:11, 28:15, 28:18, 28:24, 29:4, 29:12, 29:17, 29:20, 30:2, 30:5, 30:8, 30:13, 31:2, 31:7, 31:16, 31:23, 32:12, 32:16, 32:25, 33:9, 33:11, 33:13, 33:20, 33:24, 34:3, 34:10, 34:20, 35:7, 35:10, 35:13, 35:17, 35:25, 36:1, 36:5, 36:8, 36:11, 36:20, 36:22, 37:1, 37:6, 37:10, 37:14, 37:18, 37:22, 37:24, 38:1, 38:4, 38:17, 38:21, 39:2, 39:4, 39:7, 39:10, 39:13, 39:15, 39:20, 40:1, 40:4, 40:12, 40:16, 40:19, 40:23, 41:1, 41:3, 41:8, 41:18, 41:25, 42:2, 42:7, 42:12, 42:20, 42:24, 43:1, 43:4, 43:6, 43:9, 43:13, 43:16, 43:19, 43:21, 43:24, 44:3, 44:6, 44:9, 44:11, 44:13, 44:16, 44:18, 44:21, 45:1, 45:3, 45:7, 45:14, 45:20, 46:1, 46:10, 46:15, 46:19, 46:23, 47:2, 48:4
**court** - 2:8, 32:8, 33:5
**courthouse** - 32:11
**Courthouse** - 1:13
**Courts** - 26:6, 26:10
**cover** - 12:12, 41:16, 43:8, 44:4
**covered** - 11:12
**criminal** - 10:22, 13:2, 13:4
**crux** - 10:12
**curious** - 26:22
**Cynthia** - 2:9, 22:21

# D

**D** - 33:25
**damages** - 31:10, 31:11
**date** - 33:25, 34:7, 34:9,

2